**No. 26-1483**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

JAMES TUCCORI, ET AL.,
*Plaintiffs-Appellees*,

v.

AT WORLD PROPERTIES, LLC, ET AL.,
*Defendants-Appellees,*

APPEAL OF: AARON BOLTON,
*Proposed Intervenor-Appellant*

_____

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO PROPOSED
INTERVENOR-APPELLANT'S MOTION TO EXPEDITE**

_____

Myles McGuire
Evan Meyers
Paul T. Geske*
 *COUNSEL OF RECORD*
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Jonathan M. Jagher
Matthew W. Ruan
JUSTICE JAGHER LONDON
& MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
jjagher@jjlmlaw.com
mruan@jjlmlaw.com

*Counsel for Plaintiffs-Appellees*

Plaintiffs-Appellees James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez a/k/a Aleandro Lopez, both individually and on behalf of the certified settlement class in the preliminarily approved class settlement below (the "*Tuccori* Plaintiffs"), respectfully submit this Response in Opposition to Proposed Intervenor-Appellants' Motion to Expedite (Dkt. 35, the "Motion to Expedite" or "Motion").

## I.     <u>INTRODUCTION</u>

Expediting this appeal is neither necessary nor appropriate. This appeal does not present any "emergency situations" that require accelerated briefing. Practitioner's Handbook for Appeals at 106 (2020 ed.). Appellants' own four-month delay between noticing this appeal and bringing their Motion, as well as their prior request for a 60-day extension to file their brief, belie their arguments for expediting this appeal.

Timing issues aside, Appellants have not pointed to any exigent circumstances that could suddenly necessitate expediting this appeal now. Under Federal Rule 23(e), Appellants have the right to object to approval of the settlement in the proceedings below and to be fully heard prior to final approval. Indeed, the District Court has expressly invited Appellants to submit their objection.

Appellants' stated intent to use oral argument in this appeal to attempt to influence the District Court's consideration of final approval is both unnecessary—

1

since Appellants can already fully present their objections to the District Court—and improper because it would invite this Court to prejudge the merits of the settlement on an incomplete record when the fairness and adequacy of the underlying settlement are not even before the Court as part of this intervention appeal. (Appellants' Opening Br. at 2) (acknowledging that this appeal is not "about the substantive fairness of the *Tuccori* settlement").

The *Tuccori* Plaintiffs welcome scrutiny over their settlements. That scrutiny will show that the settlements are fair, reasonable, and adequate; negotiated at arms' length; and subject to proper oversight from a court-appointed special master, former Northern District of Illinois Chief Judge James F. Holderman (Ret.). However, the District Court is in the best position to evaluate the fairness of the settlement in the first instance.

Appellants' Motion to Expedite demonstrates that they are attempting to expedite this premature appeal in order to circumvent the Rule 23(e) objection process and gain leverage over *Tuccori* class counsel, which they hope to use to extract fees from the meritorious settlements the *Tuccori* class counsel negotiated. (Tr. of Mar. 4, 2026 H'ng at 28:15-23) ("if it so happens that the settlement is preliminary approved, we would intend to make an application for fees and expenses . . . . that was part of our basis for intervention, and it's still something we intend to present at the appropriate time.").

Regardless of their motives, Appellants' own repeated delays and the absence of any need for expedition doom Appellants' Motion. The Motion to Expedite should be denied in its entirety.

## II.     <u>BACKGROUND</u>

Appellants' Motion to Expedite contains numerous misstatements and misrepresentations about the *Tuccori* action and the underlying court-approved class settlement. To correct these misstatements for the benefit of the Court, the *Tuccori* Plaintiffs provide the following brief background.

### A.     **The *Tuccori* Homebuyer Litigation Was Filed In The Wake Of Prior Antitrust Cases Brought By Home Sellers.**

The *Tuccori* action was initiated in December 2023 and pleads claims arising out of an alleged antitrust conspiracy in the market for real estate broker services. The *Tuccori* Plaintiffs allege that brokerages adopted, implemented, and enforced certain anticompetitive trade association rules that kept brokers' commissions artificially elevated at the expense of consumers.

The *Tuccori* Plaintiffs have pursued relief specifically for home*buyers* (indirect purchaser), because prior antitrust cases brought by home *sellers* (direct purchasers) led to court-approved settlements that released all claims belonging to individuals who have sold a home. *See, e.g., Burnett v. The Nat'l Ass'n of Realtors*, No. 4:19-cv-0332 (W.D. Mo.); *Moehrl v. The Nat'l Assoc. of Realtors*, No. 19-cv-01610 (N.D. Ill.). In antitrust parlance, home sellers are considered the "direct

purchasers" of broker services (because they contract directly with the seller-broker and are the party paying the commission), whereas homebuyers are the "indirect purchasers" (since the commissions are incorporated into the purchase price of the home and passed through to the buyer).

Defendant-Appellee Anywhere Real Estate Inc. ("Anywhere") is a settling party in the court-approved home seller settlements, as are nearly all of the other *Tuccori* defendants. Importantly, the releases in the home seller settlements cover *all* of the home seller class members' claims arising out of the alleged conspiracy among real estate brokerages, including claims related to home sales *and* any home purchases those individuals made during the same period. Because most individuals who sell a home also simultaneously buy a new one to relocate to, the vast majority of homebuyers are also sellers and have released their claims through the existing settlements.

### B.    The *Tuccori* Litigation Leads To The First Homebuyer Class Settlement.

Given the court-approved direct purchaser settlements, the *Tuccori* Plaintiffs sought relief for just the unreleased "buyer-only" indirect purchaser claims that were carved out of the prior settlements. The *Tuccori* Plaintiffs' litigation efforts succeeded in advancing the buyer-side litigation. They were the first nationwide to achieve an indirect purchaser (homebuyer) class settlement, and the *Tuccori* Plaintiffs' counsel were the first to be appointed class counsel for a homebuyer class.

The *Tuccori* Plaintiffs reached the first-ever homebuyer antitrust settlement with Defendant At World Properties, LLC ("@properties") in 2024 following a mediation conducted by former Northern District of Illinois Chief Judge James F. Holderman (Ret.). (*Tuccori*, ECF No. 58 at 5). The *Tuccori* Plaintiffs' counsel subsequently reached additional settlements with nine other real estate brokerage company defendants who agreed to join with @properties in a global settlement presented for approval in October 2025. (*Id.* at 5-6). The negotiations that preceded these ten settlements spanned many months and numerous, separate mediation sessions. (*Id.* at 5-6, 20-21). The District Court granted preliminary approval on October 16, 2025, finding the settlement fair, reasonable, adequate, and negotiated at arms' length by experienced counsel. (*Tuccori*, ECF No. 65 ¶ 3).

The *Tuccori* settlement included an opt-in mechanism—modeled off of a similar procedure utilized in the in the *Burnett* direct purchaser settlement—that allowed alleged co-conspirators and unnamed brokerages to opt into the settlement by agreeing to implement or maintain certain practice changes and contributing a payment to the *Tuccori* settlement fund, which would generate additional monetary relief for the settlement class. (*Tuccori*, ECF No. 58-1 ¶¶ 35-36); (*Tuccori*, ECF No. 58 at 8) (summarizing the Settlement's opt-in procedure). Additionally, the District Court appointed former Chief Judge Holderman to serve as the Special Master for Mediation to conduct, supervise, and oversee negotiations with potential opt-in

settlors, ensuring that all negotiations were conducted at arms' length and subject to proper oversight. (*Tuccori*, ECF No. 58-1 ¶¶ 32-34); (*Tuccori*, ECF No. 65 ¶ 15).

Because the alleged conspiracy at issue in this litigation covers almost the entire real estate brokerage industry, and because other alleged co-conspirators are potentially jointly and severally liable for the same claims the *Tuccori* Plaintiffs asserted against the original *Tuccori* Defendants, the *Tuccori* settlement's opt-in procedure is an appropriate and sensible method of resolving claims the *Tuccori* settlement class members have against other named and unnamed alleged co-conspirators.

Indeed, this type of opt-in procedure was successfully implemented in *Burnett*, where it led to additional settlements with more than two dozen non-party opt-in settlors. *See Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2024 WL 2842222, at *5 (W.D. Mo. May 9, 2024) ("The NAR settlement also provides opportunities for various multiple listing services and brokerages to opt-in to the settlement, which may provide still further financial compensation to the Settlement Class."). The opt-in mechanism approved here has proven successful as well, leading to settlements with 16 other alleged co-conspirators and substantial additional compensation for the *Tuccori* settlement class. (*Tuccori*, ECF No. 168). These settlements—all of which have been preliminarily approved—represent an excellent result for the settlement class members, and the *Tuccori* Plaintiffs look

forward to presenting them for final approval.[1]

## C.     Appellants Attempt To Pursue Already-Released Claims.

Unlike the *Tuccori* Plaintiffs, Appellants have insisted on litigating (and attempting to settle) homebuyer claims that were already released in the prior settlements reached in the direct purchaser litigation. Due to this misguided litigation strategy, Appellants have been largely unsuccessful in advancing their cases and in negotiating settlements. For example, Appellants' first and only attempt to move for class certification was stricken when they sought to certify an overbroad class that included already-released homebuyer claims. (Minute Entry, *Batton v. Nat'l Ass'n of Realtors*, 1:21-cv-00430 (N.D. Ill. Nov. 13, 2025), ECF No. 257). The *Batton* court held this was improper, struck both the plaintiffs' class certification motion and their motion to have their attorneys appointed interim class counsel, and stayed all further class certification proceedings pending resolution of the appeals filed from final approval in the direct purchaser litigation. (*Id.*).

Appellants' unreasonable and legally unsound litigation strategy—and their insistence that brokerages pay a second time to resolve claims that have already been settled—led a number of the *Batton* defendants such as Anywhere to conclude that

---

[1] As explained in the *Tuccori* Plaintiffs' filings in the District Court, the *Tuccori* settlements capture just as much compensation per claim as the home seller plaintiffs negotiated after they prevailed at trial. (*Tuccori*, ECF No. 168 at 17-19). This result is especially noteworthy since the indirect purchaser here involve merits challenges and problems of proof that the direct purchasers (home sellers) did not have to contend with.

the *Tuccori* settlement provided a more appropriate framework to resolve the unreleased homebuyer claims. Accordingly, these defendants availed themselves of the *Tuccori* settlement's court-approved opt-in procedures.

### D.     The District Court's Order Denying Intervention.

Appellants have known about the *Tuccori* action at least as far back as February 2024. (*Tuccori*, ECF No. 107-1 at 5). And they have admitted that they were aware of the *Tuccori* settlement and its opt-in procedure when the District Court granted preliminary approval in October 2025. (*Tuccori*, ECF No. 102-1 at 1). Nonetheless, they did not object to the settlement or move to intervene until months later, when the *Tuccori* Plaintiffs filed their first motion for preliminary approval of settlements with opt-in settlors.

In February 2026, Appellants sought to intervene to specifically to challenge the adequacy of Anywhere's settlement payment and to seek an award of attorneys' fees for their counsel. (Tr. of Mar. 4, 2026 H'ng at 28:15-23) ("if it so happens that the settlement is preliminary approved, we would intend to make an application for fees and expenses . . . . that was part of our basis for intervention, and it's still something we intend to present at the appropriate time."). The District Court correctly denied Appellants' request to intervene, finding that their interests would "not be impaired if intervention is denied," since they have "the opportunity, vis-à-vis the settlement process, to object to the proposed settlement" and to be heard "in

8

connection with the final approval hearing." (*Tuccori*, ECF No. 118 at 1-2) (citations and quotation marks omitted). The District Court also emphasized that intervention would prejudice the existing parties in *Tuccori* because "[i]ntervention at this point in litigation, after the court has approved the preliminary settlement agreement but before the fairness hearing, 'would cause undue delay and prejudice by derailing the current settlement process at a point when [Bolton] still has ample opportunity to protect his rights through the regular class action settlement process.'" (*Id.* at 2-3).

## III.   ARGUMENT

Appellants Motion to Expedite is unfounded and should be denied.

*First*, Appellants' own four-month delay in bringing their Motion demonstrates that there is no need to expedite this appeal. In cases where there may be a need for accelerated briefing, counsel should promptly "make the court aware of the exigent circumstances" and "be willing to file the brief in a severely shortened time period." Practitioner's Handbook for Appeals at 106 (2020 ed.).

Appellants did the exact opposite. Rather than moving for expedited scheduling at the outset of this appeal, they sought a 60-day extension to file their opening brief. (Dkt. 16); (*see also* Dkt. 20) (granting extension). They also received two other extensions, which they did not oppose. (*See* Dkts. 9, 24). In total, Appellants were given more than four months since noticing this appeal to file their

brief.[2] They failed to request expedited scheduling at any point during that period. Instead, they waited until the same day they filed their brief—125 days after noticing this appeal—to request that Appellees not be afforded *any* reciprocal extension needed to sufficiently prepare their response briefs. This type of gamesmanship is not an appropriate use of Federal Rule of Appellate Procedure 2 and Circuit Rule 2.

**Second**, this appeal does not present any "emergency situations" or other exigent circumstances that require an accelerated decision. There is no risk that Appellants' rights will be impaired in the proceedings below because they have the right under Rule 23(e) to object to approval of the settlement and to be fully heard on their objections.[3] Indeed, Appellants were invited to object at the preliminary approval stage before class notice even began, but they made the tactical decision not to, likely because they believed it would undercut their arguments for intervention.[4] Even so, Appellants will still have the opportunity to object to any aspect of the settlement and to be fully heard at the final approval stage. The District

---

[2] Appellants filed their Notice of Appeal on March 12, 2026 (Dkt. 1) and filed their opening brief 125 days later on July 15, 2026. (Dkt. 33).

[3] District courts can and often do consider "reverse auction" and collusion objections like those Appellants raise here at the time of final approval without the need for intervention. For instance, another federal court recently rejected similar reverse-auction objections to settlements in the home seller (direct purchaser) side of this same real estate brokerage litigation where Appellants' counsel also objected, and the *Tuccori* Plaintiffs are confident the same will happen here. *1925 Hooper v. The Nat'l Ass'n of Realtors*, No. 1:23-cv-5392, 2026 WL 1508737, at **14-16 (N.D. Ga. Mar. 31, 2026).

[4] *Tuccori*, ECF No. 150 at 3-4 (inviting Bolton to submit his objections in response to the *Tuccori* Plaintiffs' forthcoming motion for preliminary approval of settlements with opt-in settlors and collecting cases where courts heard objections at the preliminary approval stage).

Court has invited Appellants to present their objections and will give those objections full consideration prior to final approval.[5] Indeed, the District Court is in the best position to address Appellants' objections in the first instance given its familiarity with the settlement and the underlying proceedings. *See Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("Our review of the district court's scrutiny of a proposed class settlement is more limited: we review the district court's decision for abuse of discretion." (citing *Isby v. Bayh,* 75 F.3d 1191, 1196–97 (7th Cir. 1996))).

The settlement approval process and Rule 23(e) sufficiently safeguard Appellants' rights. If they ultimately succeed in convincing the District Court that the settlement should not be approved, then there will be no court-approved settlement, Appellants' rights and claims will be unaffected, and this appeal will be moot. Alternatively, if the District Court overrules Appellants' objections, they can appeal that ruling as of right without intervening. *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 319 (7th Cir. 2012) ("[*Devlin v. Scardelletti*, 536 U.S. 1 (2002)] holds that a [class] member . . . who asks the district court not to approve a settlement, need not intervene in order to appeal an adverse decision."); *In re Synthroid Mktg.*

---

[5] *Tuccori*, ECF No. 177 at 9-10 ("The Court specifically notes that Aaron Bolton has at various times moved to intervene in this action and sought to stay this Court's consideration of preliminary approval of certain Opt-In Settlements. But Federal Rule 23(e) already protects Mr. Bolton's right to object to the Opt-In Settlements. Therefore, the Court specifically invites Mr. Bolton, as a Settlement Class Member, to object to any aspect of any Opt-In Agreements so that this Court can consider the merits of his objection before issuing a decision on final approval.").

11

*Litig.*, 325 F.3d 974, 976-77 (7th Cir. 2003) (same). In either scenario, Appellants' rights will be protected. Because Appellants' rights will not be impaired regardless of the outcome of this appeal, there is no need for an expedited decision.

Appellants' Motion demonstrates that they are actually seeking to expedite this appeal for improper purposes. Appellants state that they hope to elicit comments or questions at oral argument that they can use as leverage in the proceedings below. (Dkt. 35 at 4). However, Appellants should not be permitted to expedite this appeal as a tactic to prematurely attack the settlement based on an incomplete record. As Appellants concede, the fairness and adequacy of the settlement are not before the Court in this appeal. (Appellants' Opening Br. at 2) (acknowledging that this appeal is not "about the substantive fairness of the *Tuccori* settlement"). Further, Appellants have yet to present their objections to the District Court in the first instance. Because they will have the opportunity to object and be heard, there is no need to circumvent the well-established settlement approval process and prejudge the merits of the settlement on an incomplete record.

***Third***, granting Appellants' Motion to Expedite would unfairly prejudice the *Tuccori* Plaintiffs. The *Tuccori* Plaintiffs are in the process of engaging appellate counsel who will require additional time to review the record, analyze all issues presented in the briefing, and prepare a sufficient response brief. Moreover, Appellants have solicited amici who have also submitted extensive briefs.

12

Appellants' attempt to force the *Tuccori* Plaintiffs to respond to multiple, complex briefs in a condensed period of time is unfairly prejudicial.

Appellants' remaining arguments for expediting the appeal are also meritless. They contend that they are likely to succeed on the merits of their intervention arguments, but the cases they cite are inapposite. Appellants primarily rely upon *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013) and *Alcarez v. Akorn, Inc.*, 99 F.4th 368 (7th Cir. 2024). However, neither of these decisions were issued in the context of a class *settlement* where the procedures of Federal Rule 23(e) apply and entitle class members to object to a settlement or challenge the adequacy of class counsel without intervening. Rather, both cases were decided in a *litigation* context where there are distinct justifications to permit intervention. *See Alcarez*, 99 F.4th at 372-373 ("Plaintiffs d[id] not move for class certification," so "Rule 23(e), which requires judicial approval only when a certified class action is settled or dismissed, d[id] not come into play."); *Standard Fire*, 568 U.S. at 594 (considering whether a class representative could stipulate not to seek damages in excess of the amount-in-controversy threshold in order to avoid removal and keep their case in state court).

Because this matter involves a court-approved class settlement, Rule 23(e) provides the proper procedure for challenging the settlement, and intervention is neither necessary nor appropriate; Appellants already have the right under Rule 23(e) to convey their concerns to the District Court, be heard on their objections, and

appeal any adverse decision. *State v. City of Chi.*, 912 F.3d 979, 987 (7th Cir. 2019) (affirming denial of intervention when the intervenor could "convey its concerns to the district court at [a] fairness hearing."); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 537 (7th Cir. 1987) (affirming denial of intervention because the intervenor "would suffer little prejudice if it were denied permission to intervene" since it "had an opportunity to present its views to the district court").

Finally, Appellants also argue that expedition is appropriate because the District Court's preliminary approval order enjoined them proceeding against certain settling parties pending final approval in *Tuccori*. (Dkt. 35 at 5). However, as stated above, Appellants could have—but chose not to—object to entry of the District Court's preliminary approval order. Having sat on their hands, they cannot now complain about the effects of the District Court's order. Moreover, Appellants' claims were already stayed in large part pending resolution of the appeals filed from the orders granting final approval to the direct purchaser (home seller) settlements, where Appellants have also objected. (*See, e.g.*, Minute Order, *Batton*, No. 21-cv-00430 (N.D. Ill. Mar. 24, 2026), ECF No. 308) ("proceedings in this case are already stayed for the most part, pending resolution of the *Burnett* appeal before the Eighth Circuit.").

In any event, expediting this appeal will not accelerate the District Court's decision as to whether to grant final approval, which the District Court will

14

ultimately reach regardless of the outcome of this appeal.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Appellants' Motion to Expedite should be denied.

Dated: July 27, 2026

JAMES TUCCORI, COURTNEY FOREGGER, KEVIN CWYNAR, DAWID ZAWISLAK, MICHAEL D'ACQUISTO, and ALEJANDRO LOPEZ A/K/A ALEANDRO LOPEZ, individually and on behalf of similarly situated individuals

By: */s/ Paul T. Geske*
One of Plaintiffs-Appellees' attorneys

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
T: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Jonathan M. Jagher
Matthew W. Ruan
JUSTICE JAGHER LONDON
& MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
T: (224) 632-4500
mruan@jjlmlaw.com
jjagher@jjlmlaw.com

*Counsel for Plaintiffs-Appellees*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned certifies that: this Response complies with the length and type-volume limitations of Fed. R. App. P. 27(d)(2), because this Response contains 3,453 words, excluding the sections exempt under Rules 27(a)(2)(B) and 32(f); and that this Response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this Response has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

/s/ *Paul T. Geske*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2026 the foregoing *Plaintiffs-Appellees' Response in Opposition to Proposed Intervenor-Appellant's Motion to Expedite* was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system, which will cause a copy of said document to be electronically transmitted to all counsel of record.

/s/ *Paul T. Geske*