**No. 26-1483**

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

JAMES TUCCORI, ET AL.,
*Plaintiffs – Appellees*,

v.

AT WORLD PROPERTIES, LLC & ANYWHERE REAL ESTATE INC.,
*Defendants – Appellees*,

AARON BOLTON,
*Proposed Intervenor-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 1:24-cv-00150 (Hon. Lindsay C. Jenkins)

**BRIEF OF RETIRED FEDERAL JUDGES
DIANE P. WOOD, DAVID H. COAR, G. PATRICK MURPHY,
AND NANCY GERTNER AS *AMICI CURIAE* IN SUPPORT OF
PROPOSED INTERVENOR-APPELLANT AARON BOLTON**

David C. Frederick
Shunhe Wang
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
swang@kellogghansen.com
*Counsel for Amici Curiae*

July 22, 2026

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. At World Properties, LLC & Anywhere Real Estate Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Retired federal judges Diane P. Wood, David H. Coar, G. Patrick Murphy, & Nancy Gertner as amici curiae in support

 of proposed Intervenor-Appellant Aaron Bolton

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Kellogg, Hansen, Todd, Figel & Frederick, PLLC


(3)   If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

      N/A

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ David C. Frederick                    Date: 07/22/2026

Attorney's Printed Name:  David C. Frederick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address:  1615 M Street N.W., Suite 400, Washington, DC 20036


Phone Number:  (202) 326-7951                    Fax Number:

E-Mail Address:  dfrederick@kellogghansen.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. At World Properties, LLC & Anywhere Real Estate Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  Retired federal judges Diane P. Wood, David H. Coar, G. Patrick Murphy, & Nancy Gertner as amici curiae in support

  of proposed Intervenor-Appellant Aaron Bolton

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Kellogg, Hansen, Todd, Figel & Frederick, PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Shunhe Wang     Date: 07/27/2026

Attorney's Printed Name:  Shunhe Wang

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]   **No** [✓]

Address:  1615 M Street N.W., Suite 400, Washington, DC 20036

Phone Number: (202) 367-7813     Fax Number:

E-Mail Address: swang@kellogghansen.com

rev. 12/19 AK

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES................................................................iii

IDENTITY AND INTEREST OF *AMICI CURIAE* ................................ 1

INTRODUCTION.......................................................................... 4

ARGUMENT .................................................................................. 7

I.    THE CHALLENGED SETTLEMENT PROCESS
      BYPASSES THE FEDERAL COURTS'
      COORDINATION MECHANISMS.................................................. 7

II.   THE CHALLENGED PROCESS BEARS THE
      HALLMARKS OF A REVERSE AUCTION AND
      WOULD DISTORT COMPLEX CLASS-ACTION
      PRACTICE ...................................................................... 11

III.  THE CHALLENGED PROCESS UNDERMINES
      COMITY PRINCIPLES............................................................ 16

IV.   INTERVENTION IS THE PROPER MECHANISM TO
      TEST THE SETTLEMENT STRUCTURE BEFORE
      APPROVAL .................................................................... 20

CONCLUSION ..................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*Alcarez v. Akorn, Inc.*, 99 F.4th 368 (7th Cir.), *cert. denied*,
145 S. Ct. 377 (2024) ................................................................22

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .........................15

*Community Bank of N. Virginia, In re*, 418 F.3d 277
(3d Cir. 2005)................................................................................12

*Davis v. Hanna Holdings, Inc.*, 822 F. Supp. 3d 494
(E.D. Pa. 2026) ............................................................................18

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ................................................21

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Tr. Co.*,
834 F.2d 677 (7th Cir. 1987) ......................................................15

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) ......................................................17

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277
(7th Cir. 2002) ....................................................................... 11, 12

*Synthroid Mktg. Litig., In re*, 264 F.3d 712 (7th Cir. 2001) ...................22

*Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
874 F.3d 692 (11th Cir. 2017) ....................................................12

*West Gulf Maritime Ass'n v. ILA Deep Sea Loc. 24*,
751 F.2d 721 (5th Cir. 1985) ......................................................16

**STATUTES AND RULES**

28 U.S.C. § 1404 ...................................................................................8, 9

28 U.S.C. § 1404(a)..................................................................................8

28 U.S.C. § 1407(a) ..................................................................8

Fed. R. App. P. 29(a)(4)(E) ......................................................1

N.D. Ill. L.R. 40.4 ...................................................................8

N.D. Ill. L.R. 40.4(a)-(b) .........................................................8

## OTHER MATERIALS

*Batton v. Compass, Inc.*, No. 1:23-cv-15618 (N.D. Ill.):

    Minute Entry, Dkt. 202 (Apr. 30, 2026)........................................14

    Minute Entry Staying Case, Dkt. 206 (May 29, 2026)..................19

*Batton v. National Ass'n of Realtors*, No. 1:21-cv-430 (N.D. Ill.):

    Minute Entry, Dkt. 124 (Feb. 20, 2024) ...........................................9

    Minute Entry Staying Case, Dkt. 335 (May 29, 2026)..................19

John C. Coffee, Jr., *Class Wars:  The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343 (1995)................... 12, 13

*Davis v. Hanna Holdings, Inc.*, No. 2:24-cv-2374 (E.D. Pa.):

    Compl. – Class Action, Dkt. 1 (May 31, 2024)..............................10

    Def.'s Mot. To Stay in Light of Pending Settlement in Related Litigation, Dkt. 129 (Mar. 19, 2026)................................18

Howard M. Erichson, *The Problem of Settlement Class Actions*, 82 Geo. Wash. L. Rev. 951 (2014) ................................................15

*Judiciary Seeks 71 Judgeships to Meet Growing Caseloads*, U.S. Courts (Mar. 11, 2025), https://www.uscourts.gov/ data-news/judiciary-news/2025/03/11/judiciary-seeks- 71-judgeships-meet-growing-caseloads ........................................11

iv

*Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040 (S.D. Fla.):

    Am. Class Action Compl., Dkt. 45 (June 11, 2024) ....................... 10

    Class Action Compl., Dkt. 1 (Apr. 29, 2024) ............................... 9-10

    HomeServices Defs.' Notice of Opt-in Settlement in
    *Tuccori*, Dkt. 193 (Apr. 20, 2026) .................................................... 18

    Order, Dkt. 191 (Apr. 17, 2026) ...................................................... 18

    Order , Dkt. 211 (June 23, 2026) ..................................................... 19

4 *Newberg and Rubenstein on Class Actions* (6th ed.) ............................. 13

Pl. James Tuccori's Interested Party Response to *Gibson*
    and *Umpa* Pls.' Mot. for Transfer and Centralization
    Pursuant to 28 U.S.C. § 1407, *In re Real Estate
    Comm'n Antitrust Litig.*, MDL No. 3100, Dkt. 290
    (J.P.M.L. Jan. 26, 2024) ................................................................. 10

Preliminary Approval Order, *Tuccori v. At World Props., LLC*,
    No. 1:24-cv-150, Dkt. 177 (N.D. Ill. May 26, 2026) ....................... 19

Amanda M. Rose, *Classaction.gov*, 88 U. Chi. L. Rev. 487
    (2021) .............................................................................................. 13

Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr.,
    *Managing Class Action Litigation:  A Pocket Guide for
    Judges* (3d ed. 2010) ....................................................... 13, 14, 21

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici* are retired federal judges who served on the United States district courts and courts of appeals.  They have presided over complex civil litigation, including antitrust class actions involving overlapping lawsuits, coordinated proceedings, extensive discovery, expert submissions, and proposed class settlements.

Their experience bears directly on the institutional issues presented here.  Judge Diane P. Wood served for nearly three decades on the United States Court of Appeals for the Seventh Circuit, including nearly seven years as Chief Judge.  Judge David H. Coar served for 16 years as a United States District Judge for the Northern District of Illinois, where he presided over class actions, multidistrict proceedings, and complex antitrust and commercial litigation.  Judge G. Patrick Murphy served for more than 15 years as a United States District Judge for the Southern District of Illinois, including seven years as

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for any party to this appeal has authored this *amici curiae* brief, in whole or in part, nor has any party to this appeal or their respective counsel contributed money to fund the preparation or submission of this brief.  No other person or entity other than *amici* or their counsel contributed money that was intended to fund preparing or submitting this brief.  A motion for leave to file accompanies this brief.

Chief Judge, and presided over substantial class and complex litigation. Judge Nancy Gertner served for 17 years as a United States District Judge for the District of Massachusetts and, since leaving the bench, has taught and written about judicial decisionmaking and the institutional responsibilities of federal judges.

*Amici* submit this brief to address an institutional concern. Federal courts depend on orderly procedures for managing overlapping class actions, conserving judicial resources, and preserving comity among coordinate courts. When claims are litigated for years before one court but then are attempted to be released through a later-filed settlement proceeding before another court in which the settling defendants were not previously parties, the court reviewing the settlement should, at a minimum, have the benefit of adversarial participation by those who prosecuted the claims and whose litigation will be extinguished.

Complex class actions require sustained judicial attention. Courts decide threshold motions, manage discovery, resolve disputes among parties, supervise class-certification proceedings, and evaluate proposed settlements for absent class members. Those rulings and case-

2

management efforts shape the parties' litigation risk, settlement posture, and understanding of the claims. A settlement process that bypasses the courts and the adversaries that performed that work imposes costs on the judicial system as well as on the litigants.

*Amici* do not ask this Court to decide whether any proposed settlement is fair, reasonable, and adequate. Nor do they take a position on the merits of the underlying antitrust allegations. Their interest is in the process by which class settlements are examined from preliminary approval, notice, and final approval. In *amici*'s experience, a court is best positioned to assess a proposed class settlement from its inception when it hears from those with a concrete, litigation-tested stake in the claims being released. Intervention gives the settlement court that perspective.

**INTRODUCTION**

This case presents the question whether a plaintiff may be denied intervention when defendants, after defending against his claims for years in one federal court, seek to release those claims through a later-filed settlement process before another court in the same District.

The challenged, court-approved opt-in process used in this case transformed a later-filed proceeding—originally directed at one set of defendants—into a vehicle for releasing claims against another group of defendants who had spent years litigating in other federal courts. Those courts devoted years to adjudicating those cases. Only after the Proposed Intervenor had secured favorable rulings, developed expert evidence, and moved for class certification did the overlapping defendants join the *Tuccori* settlement process and seek releases there.

That kind of forum shift is ordinarily the business of courts, not private settlement design. Federal courts have tools for managing overlapping proceedings: multidistrict litigation ("MDL") centralization, transfer, related-case assignment, consolidation, and stays. They also adhere to comity principles that help affected courts respect one another's work and avoid needless interference. Those mechanisms

4

and principles require judicial decisionmaking under public criteria. Defendants bypassed them.

The result creates a familiar class-action danger.  When defendants can move from the courts where claims have been tested to a later-filed settlement proceeding where those claims were not litigated (or even filed against those defendants before bargains were struck), the process begins to resemble the reverse auction against which courts and commentators long have warned.  Defendants facing pressure in one case may seek global peace in another, later-filed proceeding with counsel who did not develop the claims, who did not invest into the claims and had no litigation risk, and who were happy to walk away and leave the litigation to others in the event they did not reach a pre-filing settlement.  That risk is especially acute where, as here, the later proceeding functions as a settlement-only vehicle for those defendants.

Objecting at final approval does not substitute for intervention when a would-be intervenor objects to the process that produced the settlement and not merely its terms.  By final approval, the settlement has momentum, the record largely has been assembled by parties

supporting approval, and the court is asked to evaluate releases without the benefit of full adversarial participation from the litigant who developed the claims.  Nor would objector status allow that litigant to oppose, and if necessary appeal, earlier steps that shaped the settlement process, such as amendment of the complaint to add settling defendants, approval of the opt-in process, or appointment of settlement class counsel.

If the challenged process stands, it will provide a roadmap for defendants in overlapping complex litigation.  Litigate in one forum and, if the rulings become unfavorable or the adversaries too formidable, seek a classwide release in a later-filed settlement proceeding with a different, pliable plaintiffs' counsel who did not supervise the litigation.  Adverse rulings would become not steps toward resolution, but triggers for settlement shopping.  Intervention is a modest safeguard against that result.  This Court should reverse.

6

## ARGUMENT

### I. THE CHALLENGED SETTLEMENT PROCESS BYPASSES THE FEDERAL COURTS' COORDINATION MECHANISMS

The challenged settlement process substituted private settlement design for the federal courts' ordinary procedures for managing overlapping complex litigation. Those procedures decide when one proceeding should take priority over another—whether through MDL centralization, transfer, related-case assignment, consolidation, stays, or other coordination tools. They exist to prevent duplicative litigation, conserve judicial resources, avoid inconsistent rulings, lessen the type of competition among groups of plaintiffs' counsel that can harm the class, and ensure that the court resolving the claims has an adequate understanding of them.

But here, the later-filed *Tuccori* proceeding became the forum for resolving claims against defendants who had spent years litigating those same claims elsewhere. The overlapping defendants were not originally parties in *Tuccori*. The claims against them had not been tested there. Yet the proposed settlements would release claims that other federal courts had spent years managing.

The federal courts' ordinary coordination mechanisms contain safeguards against this type of forum- and adversary-shopping.  MDL centralization requires review by the Judicial Panel on Multidistrict Litigation ("JPML") and a finding that transfer will promote the "just and efficient conduct" of civil actions sharing common factual questions.  28 U.S.C. § 1407(a).  Related-case rules serve a similar function within a district.  Northern District of Illinois Local Rule 40.4, for example, does not permit reassignment solely because two cases overlap.  It requires a court to find that the cases are related and that reassignment is likely to save substantial judicial time and effort, will not substantially delay the earlier case, and will allow the cases to be disposed of in a single proceeding.  N.D. Ill. L.R. 40.4(a)-(b).  Section 1404 transfer, another mechanism by which federal courts decide whether litigation should proceed in a different forum, requires a judicial determination that transfer serves convenience and the interests of justice.  28 U.S.C. § 1404(a).  Courts use these mechanisms to assign priority by applying open and public criteria.

The *Tuccori* opt-in process achieved a similar practical effect but without those safeguards.  It gathered defendants litigating in multiple

courts throughout the country and channeled releases through one forum.  But there was no JPML decision, no § 1404 transfer order, no related-case reassignment as to those defendants, and no decision by the courts managing the underlying litigation that their proceedings should yield.  The settlement process accomplished by private agreement what coordination doctrines ordinarily require courts to decide under public criteria.  When a later-filed settlement vehicle can release claims developed in earlier active cases without participation by the litigant who developed those claims, the system loses the transparency and accountability those mechanisms provide.

The procedural history in this action illustrates the costs of replacing judicial coordination with settlement-driven consolidation. Several defendants first maintained that the Northern District of Illinois lacked personal jurisdiction over them.  *See*, *e.g.*, Minute Entry, *Batton v. National Ass'n of Realtors*, No. 1:21-cv-430, Dkt. 124 (N.D. Ill. Feb. 20, 2024) ("*Batton I*").  After the *Batton* court accepted that position as to HomeServices of America, Inc., for example, plaintiffs filed *Lutz* in the Southern District of Florida.  *See* Class Action Compl., *Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040, Dkt. 1 (S.D. Fla. Apr. 29,

2024). Related jurisdictional disputes likewise led plaintiffs to pursue Douglas Elliman Inc. in *Lutz*, *see* Am. Class Action Compl., *Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040, Dkt. 45 (S.D. Fla. June 11, 2024), and Hanna Holdings, Inc. in *Davis*, *see* Compl. – Class Action, *Davis v. Hanna Holdings, Inc.*, No. 2:24-cv-2374, Dkt. 1 (E.D. Pa. May 31, 2024). Courts and litigants then devoted resources to developing those proceedings in the forums that defendants' jurisdictional positions had made necessary. Those same defendants who resisted litigation in Illinois sought classwide releases there through *Tuccori*, even though they never had been sued in that case.

Meanwhile, when *Tuccori* and *Batton* were before the JPML, the *Tuccori* plaintiffs opposed coordination by describing *Tuccori* as distinct from the other cases—a narrow, regional dispute involving a single defendant. *See* Pl. James Tuccori's Interested Party Response to *Gibson* and *Umpa* Pls.' Mot. for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 at 1, *In re Real Estate Comm'n Antitrust Litig.*, MDL No. 3100, Dkt. 290 (J.P.M.L. Jan. 26, 2024). Yet the same proceeding now is being used to resolve claims against national

10

defendants litigating in multiple federal courts, none of which had been sued in *Tuccori* before settlement.

This bypass imposes substantial costs. Federal courts' tools for managing complex litigation reflect a practical reality familiar to every district judge: judicial time is finite. District-court filings have far outpaced the number of authorized judgeships.[2] Effective judicial administration requires careful allocation of limited judicial resources. The *Tuccori* opt-in process constituted an end-run around these procedures in a manner that sidestepped the courts and attorneys who had spent the time developing and managing the claims.

## II.   THE CHALLENGED PROCESS BEARS THE HALLMARKS OF A REVERSE AUCTION AND WOULD DISTORT COMPLEX CLASS-ACTION PRACTICE

This Court already has recognized the danger posed by settlements with "questionable antecedents and circumstances" in overlapping class litigation. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 283 (7th Cir. 2002). In *Reynolds*, the Court warned that defendants may

---

[2] *See, e.g.*, *Judiciary Seeks 71 Judgeships to Meet Growing Caseloads*, U.S. Courts (Mar. 11, 2025), https://www.uscourts.gov/data-news/judiciary-news/2025/03/11/judiciary-seeks-71-judgeships-meet-growing-caseloads.

11

seek settlement with a lawyer "happy to sell out a class," a dynamic commentators describe as a "reverse auction." *Id.* at 282; *see also* John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1370 (1995) ("Coffee, *Class Wars*"). The Court remanded for closer judicial scrutiny of suspicious settlement circumstances even though there was no proof of collusion between plaintiffs' and defendants' counsel. *See Reynolds*, 288 F.3d at 283. Other courts of appeals have recognized this same danger. *See, e.g., Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-98 (11th Cir. 2017) (reversing denial of intervention where earlier class plaintiffs alleged that a later settlement reflected a reverse auction); *In re Community Bank of N. Virginia*, 418 F.3d 277, 308, 314-15 (3d Cir. 2005) (remanding for district court to examine whether a reverse auction occurred).

The term "reverse auction" captures "a jurisdictional competition among different teams of plaintiffs' attorneys in different actions that involve the same underlying allegations." Coffee, *Class Wars*, 95 Colum. L. Rev. at 1370. In that dynamic, "[t]he first team to settle with the defendants in effect precludes the others"—including counsel "who

12

may have originated the action and litigated it with sufficient skill and zeal that the defendants were eager to settle with someone else." *Id.* Scholars continue to treat reverse auctions as a recurring problem. *See, e.g.*, Amanda M. Rose, *Classaction.gov*, 88 U. Chi. L. Rev. 487, 514-15 (2021) (proposing solutions to the reverse-auction problem).

The Federal Judicial Center ("FJC") warns against the same risk in its guidance for judges managing class actions, describing a reverse auction as "the sale of a settlement to the *lowest* bidder among counsel for competing or overlapping classes." Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* 21 (3d ed. 2010) (cleaned up) ("FJC, *Pocket Guide*"). The FJC identifies as an "especially suspicious circumstance" a settlement reached "with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing." *Id.*; *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:60 (6th ed.) (red flags of a reverse auction include failure to consolidate parallel litigation, failure to inform courts of related cases, and pre-suit meetings between defendants' and settling class counsel). Evaluating the

13

possibility of a reverse auction "requires information about all litigation dealing with the subject of the dispute."  FJC, *Pocket Guide* at 21.

This case presents the kind of settlement dynamic against which reverse-auction doctrine warns.  Bolton and his counsel litigated homebuyer claims for years.  They defeated motions to dismiss, litigated jurisdictional issues, engaged in extensive discovery, developed expert evidence, moved for class certification, and entered into an "icebreaker" settlement with Keller Williams.  Only after that work had created litigation risk and settlement leverage did the defendants Bolton sued turn to *Tuccori*, where they had not been sued, to obtain releases of the same claims.  The resulting stays halted discovery and further litigation in the earlier-filed cases while defendants pursued what the district court described as a potentially "better deal" in *Tuccori*.  Minute Entry, *Batton v. Compass, Inc.*, No. 1:23-cv-15618, Dkt. 202 (N.D. Ill. Apr. 30, 2026) ("*Batton II*").

That concern is heightened because, as to the overlapping defendants, *Tuccori* functions as a settlement-only vehicle.  Settlement-only class practice reduces the ordinary adversarial pressures that test the adequacy of representation, the value of the claims, and the scope of

14

the release.  *See Mars Steel Corp. v. Continental Illinois Nat'l Bank &*

*Tr. Co.*, 834 F.2d 677, 680-82 (7th Cir. 1987) (discussing potential issues

in settlement-only proceedings, including "selling out the class") (cleaned

up); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Howard

M. Erichson, *The Problem of Settlement Class Actions*, 82 Geo. Wash.

L. Rev. 951, 957-65 (2014).  Those adversarial safeguards matter most

when a settlement-only proceeding releases claims developed in other

courts by other counsel.

The systemic consequences extend beyond this case.  Complex

class actions often require counsel to invest years of work and substantial

resources before any recovery is assured.  That investment benefits

absent class members by developing facts, testing legal theories, building

expert evidence, and creating settlement leverage.  If defendants may

wait while one set of counsel develops the claims, and then obtain a

release from another set of counsel in a later-filed settlement forum in

which they were not previously sued, the incentives invert.  Counsel who

do the hard work can be displaced and understandably will be hesitant

to ever again assume a substantial risk to aid aggrieved citizens.

Defendants who suffer adverse rulings can shop for a cheaper exit.

15

The distortion also undermines incentives on the defense side. Defendants have less reason to enter into early "icebreaker" settlements if later-filed proceedings can be used to undercut, rather than build on, those agreements.  A system that makes early settlements a ceiling rather than a floor rewards delay instead of early resolution.

As a result, absent class members lose the benefit of the adversarial process that gave their claims value, and everyday citizens harmed by future misconduct will be unable to find quality counsel to litigate their claims.

## III.  THE CHALLENGED PROCESS UNDERMINES COMITY PRINCIPLES

The same opt-in settlement structure also disrupts comity among coordinate federal courts.  From their service on the federal bench, *amici* understand that comity among coordinate courts is a practical working norm of judicial administration.  Federal courts of coordinate jurisdiction manage overlapping proceedings by respecting one another's work, avoiding needless interference, and using established procedures when one case should yield to another.  *See, e.g.*, *West Gulf Maritime Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts long have recognized that the principle of comity requires

16

federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."). This Court has expressed the same principle in terms of "wise judicial administration." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (cleaned up).

The challenged opt-in process strains that norm. Courts in earlier-filed cases had tested pleadings, resolved jurisdictional disputes, supervised discovery, and managed the path toward class certification. Yet the *Tuccori* settlement process would make a later-filed proceeding the forum for extinguishing claims being actively litigated in the earlier ones—not through transfer, reassignment, consolidation, or another judicial determination that those proceedings should yield, but through settlements structured by defendants and counsel whose litigation decisions over the preceding years made apparent that they did not intend to prosecute claims against those defendants outside the opt-in process.

That structure puts coordinate courts in an untenable position. The earlier courts continued managing claims that the settlement court might extinguish. In the Southern District of Florida and the Eastern District of Pennsylvania, courts issued substantial rulings on motions to

17

dismiss, shortly before the affected defendants sought releases through *Tuccori*. *See* Order, *Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040, Dkt. 191 (S.D. Fla. Apr. 17, 2026) (denying dismissal motion); HomeServices Defs.' Notice of Opt-in Settlement in *Tuccori*, *Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040, Dkt. 193 (S.D. Fla. Apr. 20, 2026) (opting in three days after denial); *Davis v. Hanna Holdings, Inc.*, 822 F. Supp. 3d 494 (E.D. Pa. 2026) (denying motion to dismiss on March 9); Def.'s Mot. To Stay in Light of Pending Settlement in Related Litigation, *Davis v. Hanna Holdings, Inc.*, No. 2:24-cv-2374, Dkt. 129 (E.D. Pa. Mar. 19, 2026) (opting in 10 days after denial). The settlement court, meanwhile, had to evaluate releases of claims whose posture had been shaped elsewhere. This scenario risks both wasting judicial effort in the earlier cases and depriving the settlement court of the context needed to evaluate the releases before it.

The *Tuccori* settlement process now has produced exactly this effect on coordinate courts. The *Tuccori* preliminary approval order temporarily enjoins settlement class members, unless they opt out, from "filing, commencing, prosecuting, intervening in, or pursuing" released claims against any settling defendant, opt-in settlor, or released party

18

pending final approval.  Preliminary Approval Order ¶ 28, *Tuccori v. At World Props., LLC*, No. 1:24-cv-150, Dkt. 177 (N.D. Ill. May 26, 2026).

Other courts then stayed earlier-filed proceedings because of that injunction.  In *Batton I*, the court explained that, "[b]ecause that order temporarily enjoins litigation against any opt-in settler, this proceeding against those defendants must now be stayed."  Minute Entry Staying Case, *Batton v. National Ass'n of Realtors*, No. 1:21-cv-430, Dkt. 335 (N.D. Ill. May 29, 2026).  The same court stayed *Batton II* on the same ground, noting that it did "not wish to delay this three-year old case further."  Minute Entry Staying Case, *Batton v. Compass, Inc.*, No. 1:23-cv-15618, Dkt. 206 (N.D. Ill. May 29, 2026).  And the *Lutz* court stayed its case to avoid forcing plaintiffs to choose between complying with its orders and the *Tuccori* order.  *See* Order at 8, *Lutz v. HomeServices of Am., Inc.*, No. 4:24-cv-10040, Dkt. 211 (S.D. Fla. June 23, 2026).

Those stays illustrate the institutional problem *amici* identify. A later-filed settlement proceeding can force earlier-filed cases to pause, not because a court transferred, consolidated, reassigned, or coordinated the litigation in the ordinary course, but because a settlement order in another case made continued litigation untenable.

19

## IV.    INTERVENTION IS THE PROPER MECHANISM TO TEST THE SETTLEMENT STRUCTURE BEFORE APPROVAL

Bolton does not present an ordinary objection to settlement fairness.  An ordinary objector says the settlement pays too little, the notice is confusing, or the release is too broad.  Bolton, by contrast, contends that the settlement process itself was infected.  It bypassed the courts that developed the claims, allowed defendants to obtain a global release in a forum that had not supervised the litigation of those claims, and allowed defendants to negotiate settlements with attorneys who had done no meaningful work and had no litigation leverage to hold over their head.

The district court treated his structural challenge as ordinary. It denied intervention because Bolton could object at final approval. But an objection at the final approval hearing is not well-suited to testing whether the settlement forum itself was chosen to avoid adverse rulings, whether the deal reflects reverse-auction dynamics, or whether the opt-in settlement process undermines the coordination tools federal courts use to manage overlapping litigation.  To evaluate a reverse-auction risk, the court must hear from the party who can explain what litigation preceded the settlement, what rulings shaped the defendants'

20

exposure, what discovery and expert work informed the value of the claims, and why defendants chose to settle in a forum that had not overseen that work with attorneys who had not performed it.

A late-stage objection cannot provide a meaningful adversarial presentation. By final approval, the settlement has gathered momentum. Notice has issued. Class members have reacted. Settling parties invoke reliance. The objector must ask the court to decide fairness against a record assembled largely by parties who all support approval. So "waiting for objections or for the settling parties' presentations at the fairness hearing will be too late." FJC, *Pocket Guide* at 16.

Waiting until final approval also may narrow the issues available for appellate review. A non-intervenor objector may appeal the order approving the settlement. *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002). But that appeal may not provide meaningful review of earlier steps that made the settlement possible, including amending the complaint, approving the opt-in process, and appointing settlement class counsel.

Intervention is the bare minimum procedural safeguard needed here. It is a necessary first step that would enable the settlement court

21

to evaluate the propriety of the settlements, case transfers, and the displacement of another court's authority.  Although intervention by itself may not resolve the structural concerns described above, it at least begins a process of giving the court the adversarial record needed to evaluate the challenged settlement structure before approval.  That is why judges should "grant intervention freely when a class member contends that the representatives (or . . . their lawyers) are misbehaving." *Alcarez v. Akorn, Inc.*, 99 F.4th 368, 375 (7th Cir.), *cert. denied*, 145 S. Ct. 377 (2024); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 715 (7th Cir. 2001) (reversing denial of intervention to objectors who characterized proposed settlement as a "sell-out").

## CONCLUSION

The Court should reverse.

Respectfully submitted,

/s/ *David C. Frederick*

David C. Frederick
Shunhe Wang
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
swang@kellogghansen.com

July 22, 2026

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limitation of Seventh Circuit Rule 29 because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,954 words as counted by Microsoft Office Word 365.

2.     This document complies with the typeface requirements of Seventh Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Century Schoolbook font.

Dated:  July 22, 2026

/s/ *David C. Frederick*
David C. Frederick
*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that, on July 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *David C. Frederick*
David C. Frederick
*Counsel for Amici Curiae*