No. 26-1483

# In the United States Court of Appeals for the Seventh Circuit

JAMES TUCCORI, ET AL.,
*Plaintiffs-Appellees,*

*v.*

AT WORLD PROPERTIES, LLC, ET AL.,
*Defendants-Appellees.*

*v.*

AARON BOLTON,
*Proposed Intervenor-Appellant*

Appeal from the United States District Court
for the Northern District of Illinois, No. 24-cv-00150
The Honorable Lindsay C. Jenkins

## DEFENDANT-APPELLEE ANYWHERE REAL ESTATE INC.'S RESPONSE BRIEF


**MORGAN, LEWIS & BOCKIUS LLP**
Kenneth M. Kliebard
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606

William T. McEnroe
2222 Market Street
Philadelphia, PA 19103

Stacey Anne Mahoney
101 Park Avenue
New York, NY 10178


September 21, 2026


**FAEGRE DRINKER BIDDLE & REATH LLP**
Aaron D. Van Oort
*Counsel of Record*
Kevin P. Wagner
John L. Rockenbach
90 South Seventh Street, Suite 2200
Minneapolis, MN 55402
T: 612.766.7000
Aaron.VanOort@FaegreDrinker.com

Brian J. Paul
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
*Counsel for Defendant-Appellee*

Save As | Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Aaron D. Van Oort Date: September 21, 2026

Attorney's Printed Name: Aaron D. Van Oort

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402

Phone Number: (612) 766-8138 Fax Number: (612) 766-1600

E-Mail Address: aaron.vanoort@faegredrinker.com

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kevin P. Wagner    Date: September 21, 2026

Attorney's Printed Name: Kevin P. Wagner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402

Phone Number: (612) 766-7000    Fax Number: (612) 766-1600

E-Mail Address: kevin.wager@faegredrinker.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ John L. Rockenbach Date: September 21, 2026

Attorney's Printed Name: John L. Rockenbach

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ✓

Address: Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402

Phone Number: (612) 766-7000 Fax Number: (612) 766-1600

E-Mail Address: john.rockenbach@faegredrinker.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Brian Paul Date: September 21, 2026

Attorney's Printed Name: Brian Paul

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Faegre Drinker Biddle & Reath LLP, 300 N. Meridian Street, Suite 2500

Indianapolis, IN 46204

Phone Number: (317) 237-0300 Fax Number:

E-Mail Address: Brian.Paul@faegredrinker.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kenneth M. Kliebard Date: September 21, 2026

Attorney's Printed Name: Kenneth M. Kliebard

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Faegre Drinker Biddle & Reath LLP, 110 N. Wacker Drive, Suite 2800, Chicago, IL 60606

Phone Number: (612) 766-8138 Fax Number: (612) 766-1600

E-Mail Address: kenneth.kliebard@faegredrinker.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ William T. McEnroe Date: September 21, 2026

Attorney's Printed Name: William T. McEnroe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 2222 Market Street

Philadelphia, PA 19103

Phone Number: (215) 963-5000 Fax Number:

E-Mail Address: william.mcenroe@morganlewis.com

rev. 12/19 AK

Save As | Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1483

Short Caption: Tuccori, et al. v. AT World Properties, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anywhere Real Estate, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP; Morgan Lewis & Bockius LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Compass, Inc.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

The Vanguard Group, Inc.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Stacey Anne Mahoney Date: September 21, 2026

Attorney's Printed Name: Stacey Anne Mahoney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Morgan Lewis & Bockius LLP, 101 Park Ave, New York, NY 10178

Phone Number: (212) 309-6000 Fax Number:

E-Mail Address: stacey.mahoney@morganlewis.com

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
INTRODUCTION .......... 1
STATEMENT OF JURISDICTION .......... 5
STATEMENT OF THE ISSUES .......... 6
STATEMENT OF THE CASE .......... 7
I. The First Wave of Real-Estate Brokerage Fee Litigation and Class Settlements That Resolved Most Claims. .......... 7
II. This Second Wave of Litigation and the Different Strategies of Bolton and *Tuccori* Plaintiffs. .......... 10
A. Bolton focuses on trying to relitigate released claims and has his class motion stricken. .......... 11
B. Tuccori focuses on resolving the remaining unreleased claims and is appointed class representative. .......... 14
III. Anywhere Settles With Tuccori as the Appointed Class Representative Through a Court-Approved Process. .......... 16
IV. Bolton Files an Untimely Motion to Intervene and Subsequently Continues Participating in the Case. .......... 18
V. Coordination Mechanisms Are Used. .......... 21
SUMMARY OF ARGUMENT .......... 23
STANDARD OF REVIEW .......... 26
ARGUMENT .......... 27
I. This Court Lacks Jurisdiction Over Bolton's Interlocutory Appeal. .......... 27
A. The order denying intervention did not end the case for Bolton, so it was not a final decision. .......... 27
B. Bolton's arguments and authorities do not support jurisdiction. .......... 33
1. This is not a case where a class member moved to intervene during litigation and before a settlement. .......... 33
2. The Seventh Circuit cases. .......... 34
3. The out-of-circuit cases. .......... 36
II. The District Court Correctly Denied Intervention. .......... 38

A. Bolton's motion was untimely. .................................................... 38
B. Because of his Rule 23(e) rights, Bolton's ability to protect his interest will not be impaired without intervention. .................... 44
C. The *Tuccori* plaintiffs are adequate representatives of Bolton's interest........................................................................................ 50
D. The district court properly exercised its discretion in denying Bolton's alternative request for permissive intervention. ........... 56
III. The Fairness of Anywhere's Settlement Is Not Presented on This Appeal. ........................................................................................ 57
CONCLUSION........................................................................................ 60

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alcarez v. Akorn, Inc.*,
99 F.4th 368 (7th Cir. 2024) .......................................................... 35, 46, 47

*Aljabri v. Holder*,
745 F.3d 816 (7th Cir. 2014).........................................................................27

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015).......................................................................31

*Alliance to End Repression v. City of Chicago*,
356 F.3d 767 (7th Cir. 2004).........................................................................36

*Bhd. of R.R. Trainmen v. Baltimore & Ohio R. Co.*,
331 U.S. 519 (1947) .......................................................................... 27, 29, 30

*Bloom v. FDIC*,
738 F.3d 58 (2d Cir. 2013) ...........................................................................36

*In re Bos. Sci. Corp. ERISA Litig.*,
254 F.R.D. 24 (D. Mass. 2008).......................................................................42

*Bost v. Ill. State Bd. of Elections*,
75 F.4th 682 (7th Cir. 2023) ....................................................................56, 57

*Bradley v. Milliken*,
828 F.2d 1186 (6th Cir. 1987).......................................................................55

*In re Brand Name Prescription Drugs Antitrust Litigation*,
115 F.3d 456 (7th Cir. 1997).........................................................................35

*Matter of Broiler Chicken Antitrust Litig.*,
133 F.4th 761 (7th Cir. 2025) .......................................................................29

*Burnett v. Nat'l Ass'n of Realtors, et al.*,
No.4:19-cv-332-SRB (W.D. Mo. 2019) ..................................................*passim*

*Burnett v. Nat'l Ass'n of Realtors*,
No. 24-2143, 2026 WL 2719085 (8th Cir. Sept. 15, 2026) .....................13, 14

*Burnett v. Nat'l Ass'n of Realtors*,
No. 24-3444, 2026 WL 2421806 (8th Cir. Aug. 19, 2026) ............................13

*Carlough v. Amchem Prods., Inc.*,
5 F.3d 707 (3d Cir. 1993) ............................................................................30

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018) .....................................................................................42

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*,
824 F.2d 531 (7th Cir. 1987)...................................................................43, 44

*In Re Clearview AI, Inc. Consumer Priv. Litig.*,
181 F.4th 785 (7th Cir. 2026) ......................................................................54

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) ........................................................................47

*Cook Cnty., Ill. v. Texas*,
37 F.4th 1335 (7th Cir. 2022) ..............................................................*passim*

*Cook County, Illinois v. Mayorkas*,
340 F.R.D. 35 (N.D. Ill. 2021).......................................................................40

*Crawford v. Equifax Payment Services, Inc.*,
201 F.3d 877 (7th Cir. 2000)............................................................ 41, 42, 43

*Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*,
168 F.4th 483 (7th Cir. 2026) .......................................................................33

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ..........................................................46

*Day v. Persels & Assocs., LLC*,
729 F.3d 1309 (11th Cir. 2013).......................................................................36

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) .....................................................................................*passim*

*Dickinson v. Petrol. Conversion Corp.*,
338 U.S. 507 (1950)...............................................................................28, 29

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) .......... 32

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .......... 51, 55

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) .......... 29, 35, 50

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*,
407 F.3d 1091 (10th Cir. 2005) .......... 36

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .......... 45

*Gibson v. Nat'l Ass'n of Realtors*,
No. 24-3473, 2026 WL 2580277 (8th Cir. Sept. 1, 2026) .......... 13

*Grider v. Keystone Health Plan Cent., Inc.*,
500 F.3d 322 (3d Cir. 2007) .......... 34

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*,
316 F.3d 694 (7th Cir. 2003) .......... 39, 41

*Homie Tech., Inc. v. Nat'l Ass'n of Realtors*,
186 F.4th 763 (10th Cir. 2026) .......... 7

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .......... 1

*Jackson v. City of Madison*,
176 F.4th 1005 (7th Cir. 2026) .......... 56

*Keith v. Daley*,
764 F.2d 1265 (7th Cir. 1985) .......... 60

*Korczak v. Sedeman*,
427 F.3d 419 (7th Cir. 2005) .......... 29, 30

*Larson v. JP Morgan Chase & Co.*,
530 F.3d 578 (7th Cir. 2008) .......... 31

*Leeder v. Nat'l Ass'n of Realtors*,
601 F. Supp. 3d 301 (N.D. Ill. 2022) .......... 11

*Lelsz v. Kavanagh*,
710 F.2d 1040 (5th Cir. 1983)....................................................................37

*Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*,
924 F.3d 375 (7th Cir. 2019)......................................................................43

*Moehrl v. Nat'l Ass'n of Realtors, et al.*,
No. 1:19-cv-1610-ARW (N.D. Ill. 2019)..........................................................8

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)...................................................................................32

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008)................................................................51, 53

*Nelson v. Napolitano*,
657 F.3d 586 (7th Cir. 2011)......................................................................56

*In re PaineWebber Inc. Ltd. P'ships Litig.*,
94 F.3d 49 (2d Cir. 1996)...........................................................................30

*Park v. El Paso Bd. of Realtors*,
764 F.2d 1053 (5th Cir. 1985)......................................................................7

*People Who Care v. Rockford Bd. of Educ.*,
68 F.3d 172 (7th Cir. 1995)..................................................................44, 45

*Planned Parenthood of Wis., Inc. v. Kaul*,
942 F.3d 793 (7th Cir. 2019)..................................................................38, 56

*In re: Real Estate Commission Antitrust Litigation*,
MDL No. 3100 (Jud. Panel. Multidist. Litig. 2023)...............................21, 40

*Reedsburg Bank v. Apollo*,
508 F.2d 995 (7th Cir. 1975)......................................................................46

*Reifert v. S. Cent. Wisc MLS Corp.*,
450 F.3d 312 (7th Cir. 2006)......................................................................10

*Restoration Risk Retention Grp., Inc. v. Gutierrez*,
880 F.3d 339 (7th Cir. 2018)......................................................................26

*Retired Chicago Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993)..........................................................................29

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) .......... 29

*Richardson-Merrell Inc. v. Koller*,
472 U.S. 424 (1985) .......... 32

*Robert F. Booth Trust v. Crowley*,
687 F.3d 314 (7th Cir. 2012) .......... 30, 45

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 37

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) .......... 50

*Sam Fox Publishing Co. v. United States*,
366 U.S. 683 (1961) .......... 54

*Santiago v. City of Chicago*,
19 F.4th 1010 (7th Cir. 2021) .......... 54

*Shakman v. City of Chi.*,
No. 69 C 2145, 2007 WL 1468721 (N.D. Ill. May 18, 2007) .......... 45

*Shea v. Angulo*,
19 F.3d 343 (7th Cir. 1994) .......... 38, 45, 51, 55

*Smith v. SEECO, Inc.*,
922 F.3d 398 (8th Cir. 2019) .......... 37

*Sokaogon Chippewa Cmty. v. Babbitt*,
214 F.3d 941 (7th Cir. 2000) (D. Wood, J.) .......... 40, 46, 47

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013) .......... 46

*State v. City of Chicago*,
912 F.3d 979 (7th Cir. 2019) .......... *passim*

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987) .......... 23, 28, 30, 32

*Swinton v. SquareTrade, Inc.*,
454 F. Supp. 3d 848 (S.D. Iowa 2020) .......... 53

*Swinton v. SquareTrade, Inc.*,
960 F.3d 1001 (8th Cir. 2020)............................................................*passim*

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003)....................................................................30

*T.K. Through Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022)..................................................51

*T.K. v. Bytedance Tech. Co.*,
2021 WL 1172767 (N.D. Ill. Mar. 29, 2021)................................................45

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
874 F.3d 692 (11th Cir. 2017)............................................................*passim*

*In re Toyota Hybrid Brake Litig.*,
No. 4:20-CV-127, 2020 WL 6161495 (E.D. Tex. Oct. 21, 2020) ............53, 54

*United States ex rel. Robinson v. HealthNet, Inc.*,
124 F.4th 511 (7th Cir. 2024) ....................................................................57

*Waudby v. Verizon Wireless Servs., LLC*,
248 F.R.D. 173 (D.N.J. 2008) ....................................................................46

*Wisconsin Educ. Ass'n Council v. Walker*,
705 F.3d 640 (7th Cir. 2013)......................................................................51

*Woolen v. Surtran Taxicabs, Inc.*,
684 F.2d 324 (5th Cir. 1982)..................................................................53, 54

**Statutes, Rules & Regulations**

28 U.S.C. § 1291 ........................................................................... 5, 23, 27

28 U.S.C. § 1331 ..................................................................................5

28 U.S.C. § 1332 ..................................................................................5

28 U.S.C. § 1367 ..................................................................................5

Fed. R. Civ. P. 12.................................................................................20

Fed. R. Civ. P. 15.................................................................................34

Fed. R. Civ. P. 23.............................................................................*passim*

Fed. R. Civ. P. 24 .......... *passim*

Fed. R. Civ. P. 54 .......... 31

**Other Authorities**

Carl Tobias, *Standing to Intervene*, 1991 Wis. L. Rev. 415, 429 .......... 54

FJC, *Pocket Guide* .......... 49

## INTRODUCTION

Intervenor-Appellant Aaron Bolton's entire narrative of this case is wrong. He is not some great champion that defendants are fleeing. He wasted two years attempting to state federal antitrust claims on behalf of indirect-purchaser plaintiffs. *But see Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977). After that, he took not a single defendant's deposition. He spent most of his energy challenging the releases in prior settlements reached in the direct-purchaser cases. In his own case, he "moved to certify" a class, true enough. Bolton Br. 1. But his motion was stricken because, by his own admission, 79% of the claims in his proposed class had been released and enjoined. After his motion was stricken, he declined to pursue representation of just the home buyers with unreleased claims. As a result, he was not appointed their class representative, nor were his counsel appointed class counsel.

Instead, named plaintiff James Tuccori and counsel in this case earned that distinction. Unlike Bolton, Tuccori chose not to fight the releases in the prior settlements and instead focused on representing the home buyers with unreleased indirect-purchaser claims. Tuccori's strategy produced the icebreaker home-buyer settlements, not Bolton's. *Contra* Bolton Br. 1 (wrongly claiming "icebreaker" status). In October 2025, Tuccori and his counsel were publicly appointed to represent home buyers with unreleased claims—and their representation was not limited to their existing defendants. They were

given 180 days to negotiate with "**non-parties, such as other real estate brokerages**," to join the settlement. AA 50.[1] There was no "secret." *Contra* Bolton Br. 1. The court publicly appointed Retired Northern District of Illinois Chief Judge James Holderman as mediation Special Master. AA 50–51. Bolton knew about the *Tuccori* settlement and its opt-in mediation process, and he did not object to it.

After Bolton's motion to certify a class combining released and unreleased claims was stricken, and after Tuccori was appointed to represent solely home buyers with unreleased claims, Anywhere Real Estate, Inc., mediated with Tuccori, overseen by Judge Holderman, and reached a class settlement. Negotiating with a court-appointed class representative of a different class, in a court-pre-approved process overseen by a court-appointed mediator, is nothing like the "collusive reverse auction" cases Bolton invokes.

When Tuccori presented his class settlement with Anywhere for preliminary approval, Bolton moved to intervene to "enjoin" the Rule 23(e) settlement review process. Bolton argued that the entire opt-in process was flawed from the start. But challenging the *process* was untimely: Bolton had known about it months earlier and did not object. Bolton's only timely argument was to the settlement's terms, which the district court correctly noted he could raise in a

---

[1] All emphasis in this brief is added unless otherwise noted.

Rule 23 objection. Because Bolton could already protect his interests, the court denied intervention.

Bolton then filed this appeal, which is premature. The order denying intervention was not an appealable "final decision" ending the litigation for Bolton. With the appeal pending, Bolton has continued to participate in the litigation by objecting to Tuccori's settlements with Anywhere and other defendants he had sued. His counsel have also requested fees from the settlements. Those motions will be heard in November 2026. If the district court agrees with Bolton's objection, it could moot the intervention issue. And if the court rejects the objection (as it should), Bolton can appeal from the final approval order.

This Court should therefore reject Bolton's attempt to disrupt the district court's Rule 23 settlement review process, either by dismissing this appeal for lack of jurisdiction or else affirming the denial of intervention.

Two final notes. First, Bolton and Amici claim that coordination mechanisms such as multi-district litigation were bypassed, Bolton Br. 6; Ret. Judges Br. 7–11, with Amici saying "there was no JPML decision," Ret. Judges Br. 9. That is wrong. A petition was filed with the JPML, and all parties here supported coordination, but the JPML denied it. The district court then coordinated settlement of the unreleased buyer claims through the opt-in mediation process, and Bolton did not object.

Second, Bolton and Amici concede that "[t]his appeal is not about ... the substantive fairness of the *Tuccori* settlement." Bolton Br. 2; Ret. Judges Br. 3; Prof. Br. 15. The district court must assess fairness in the first instance, and this Court should not prejudge the issue on this appeal before a record has been created.

## STATEMENT OF JURISDICTION

Bolton's statement of jurisdiction is neither complete nor correct.

The district court has jurisdiction under 28 U.S.C. §§ 1331 and 1367 because plaintiffs alleged claims arising under federal antitrust laws, and the court properly exercised supplemental jurisdiction over the remaining state-law claims. It also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

As discussed in the argument below, this Court lacks appellate jurisdiction to review the district court's order denying Bolton's intervention request because it is not a "final" order under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. Whether this Court lacks jurisdiction over an interlocutory appeal from an order denying a motion to intervene brought by a settlement class member who continued to participate in the litigation after the denial by objecting under Rule 23 and who can appeal from a final judgment.

II. Whether the district court correctly denied a Rule 24 motion to intervene that a settlement class member filed after a proposed class settlement was reached and presented for review.

III. Whether this Court should prejudge the substantive fairness of the proposed settlement without a record or ruling from the district court.

## STATEMENT OF THE CASE

### I. The First Wave of Real Estate Brokerage Fee Litigation and Class Settlements That Resolved Most Claims.

This action is part of a second wave of antitrust actions alleging price fixing by essentially the entire U.S. real estate brokerage industry. The class settlement between Tuccori and Anywhere Real Estate, Inc. resolves the small fraction of claims (roughly 1/8) that remained after Anywhere's class settlement in the first wave of actions.

The core antitrust allegation is that, through rules promulgated by the National Association of Realtors (NAR) and similar organizations and implemented by multiple listing services (MLSs), real estate brokers and agents nationwide conspired to increase the commissions paid to buyer brokers when homes are sold. MLSs are joint ventures comprised of brokers operating in local or regional areas. *See, e.g.*, *Homie Tech., Inc. v. Nat'l Ass'n of Realtors*, 186 F.4th 763, 768 (10th Cir. 2026).

Most homes for sale are listed on an MLS. *Id.* And most consumers use real estate brokers and agents to help them sell and buy homes. "Seller brokers" represent home sellers, and "buyer brokers" help home buyers. *See generally Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1058 (5th Cir. 1985). Both are typically paid out of the sale proceeds: The seller pays the seller broker, who then pays the buyer broker. Because sellers pay the brokerage fees

directly, they are the antitrust "direct purchasers." Home buyers are only "indirect purchasers": they are affected only if higher brokerage fees cause higher home prices.

Plaintiffs allege that rules requiring MLS listings to include some offer of compensation by sellers to a buyer broker—not any particular amount, just something—had the effect of increasing the amounts paid to buyer brokers. Under their theory, every brokerage and real estate agent nationwide who agreed to those MLS rules became co-conspirators. Because the theory embraces residential home sales nationwide, the alleged damages are great enough to bankrupt every brokerage in the country many times over.

The first wave of cases were the direct-purchaser cases brought by home sellers. *See Burnett v. Nat'l Ass'n of Realtors, et al.*, No.4:19-cv-332-SRB (W.D. Mo.); *Moehrl v. Nat'l Ass'n of Realtors, et al.*, No. 1:19-cv-1610-ARW (N.D. Ill.).

This case and *Batton*—where Intervenor-Appellant Aaron Bolton is a named plaintiff—are part of a second wave of cases brought by home buyers. *See, e.g.*, *Batton v. Nat'l Ass'n of Realtors, et al.*, No. 1:21-cv-00430 (N.D. Ill.); *Tuccori v. At World Properties, LLC, et al.*, No. 1:24-cv-00150 (N.D. Ill.).

All of the liability discovery and litigation occurred in the direct-purchaser cases, and most claims—including all home-seller claims and most home-buyer claims—were settled there. From 2019 to 2023, the parties completed extensive fact and expert discovery in *Burnett*, including 80 depositions

and dozens of expert reports. *Burnett* Dkt. 1458-2 ¶¶12–13. The district court certified a class of plaintiffs who sold homes on four MLSs (out of several hundred nationwide) and set trial for October 2023. *Burnett* Dkt. 1020.

Shortly before trial in *Burnett*, Anywhere reached the first nationwide settlement. *See Burnett* Dkt. 1192. Plaintiffs settled first with Anywhere because its facts would have presented a problem for their theory at trial. Anywhere was not a NAR member and was outspoken in opposing the "mandatory offer" of compensation rule at the center of plaintiffs' case. *Burnett* Dkt. 1478 at 18–22. Indeed, Anywhere had formally petitioned NAR to rescind that rule. *Id.* at 19. These litigation risks to plaintiffs were balanced against annihilating exposure for Anywhere. Considering all factors, Anywhere agreed to pay $83,500,000 in settlement and make practice changes. *See Burnett* Dkt. 1192; *Burnett* Dkt. 1469 at 5.

Anywhere's *Burnett* settlement resolved roughly 7/8 of all possible claims against it arising from the alleged brokerage-fee conspiracy. Each home sale produced two claims—a direct-purchaser claim by the home seller, and an indirect-purchaser claim by the home buyer. Anywhere's settlement resolved all the home-seller claims, plus more than 3/4 of the home-buyer claims. Most people who sell a home also buy one, and class members who both bought and sold released ***all*** their claims. *Burnett* Dkt. 1469 at 5. Only roughly 1/4 of the home-

buyer claims—representing 1/8 of all claims—remained for the second wave of litigation. *See Batton* Dkt. 246 at 3.

RE/MAX settled in *Burnett* shortly after Anywhere for $55,000,000. *Burnett* Dkt. 1192-4 ¶21. Trial proceeded against other defendants, including NAR and Keller Williams. Most prior courts had applied rule-of-reason analysis to analogous claims against trade association rules. *See, e.g.*, *Reifert v. S. Cent. Wisc MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006) (anti-solicitation rule). The *Burnett* court, however, applied "per se" analysis. *Burnett* Dkt. 1019 at 20–21. Under that instruction, which would have been challenged on appeal, plaintiffs prevailed. The jury awarded pre-trebled damages of $1,785,310,872. *Burnett* Dkt. 1294 at 2. Keller Williams settled after the trial loss for $70,000,000. *Burnett* Dkt. 1372. NAR settled for $418,000,000. *Burnett* Dkts. 1460, 1622 at 43.

Importantly, the NAR settlement included an opt-in procedure that would allow additional unnamed co-conspirators to reach settlements. *Id.* at 22. More than 500 MLSs, and more than a dozen large brokerage firms, opted in. *Id.* Neither Bolton nor his *Batton* co-plaintiffs objected to the opt-in structure.

## II. This Second Wave of Litigation and the Different Strategies of Bolton and *Tuccori* Plaintiffs.

In this second wave of litigation, both Bolton and Tuccori sought to represent home buyers, but they took different approaches and initially named

different defendants from among the many alleged co-conspirators. Bolton focused on challenging the release of home-buyer claims in *Burnett* and attempted to re-litigate those claims. Tuccori instead focused on resolving the remaining 1/8 of unreleased claims and was appointed to represent home buyers who held those claims.

### A. Bolton focuses on trying to relitigate released claims and has his class motion stricken.

Bolton's case—originally captioned *Leeder* and now *Batton*—was filed in January 2021. *See Batton* Dkt. 1. It named as defendants NAR and the nation's four largest real estate brokerages, including Anywhere.

Until 2024, nothing happened but motion practice on the pleadings because Bolton repeatedly attempted to raise federal antitrust claims on behalf of the indirect-purchaser home buyers. Twice, the court dismissed them. *See Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022); *Batton* Dkt. 125.

When the pleadings were finally set, Bolton challenged the release of home-buyer claims in Anywhere's *Burnett* settlement instead of litigating the remaining unreleased claims. When the settlement was announced, Bolton declared an "emergency" and moved for a temporary restraining order in *Batton* to bar Anywhere from proceeding with the final approval hearing in the Western District of Missouri, arguing that the settlement would "irreparably harm

homebuyer Plaintiffs." *Batton* Dkt. 152 at 2. He argued that *Burnett* class members who were both home sellers and home buyers could not release all their claims, just their home-seller claims. He claimed a lack of "adequate representation," compared to his own "years" of work. *Id.* at 4, 10. Judge Andrea Wood denied the TRO *sua sponte*, saying plaintiffs could "present their concerns" in the approval process. *Batton* Dkt. 154 at 2.

Bolton's co-plaintiff James Mullis then filed Rule 23(e) objections to every home-seller settlement, challenging the release of class members' homebuyer claims. *See, e.g.*, *Burnett* Dkt. 1447. In May 2024, the *Burnett* court overruled the objection to the first three settlements (including Anywhere's), granted final approval, and entered an injunction prohibiting the settling class members from litigating the released claims elsewhere. *Burnett* Dkt. 1487 ¶¶ 55-60; *Burnett* Dkt. 1622 ¶¶ 127–46. The court later rejected Mullis's objections to the other settlements as well. Mullis then appealed to the Eighth Circuit.

While the appeals were pending, Bolton kept pursuing the released claims. He did nothing to develop a liability case—he did not depose a single defense witness and relied entirely on documents produced in *Burnett*. His only new discovery involved subpoenaing MLS records to collect damages data. *Batton* Dkt. 305 at 4.

In September 2025, Bolton moved to certify a class of all home buyers—including those who had released their claims and were enjoined from further

litigation. *Batton* Dkt. 236. The motion was littered with errors and required multiple resubmissions. *Batton* Dkt. 243, 249. Bolton's expert estimated that up to **79%** of claims in his proposed class had been released. *Batton* Dkt. 246 at 3. Nevertheless, Bolton did not provide any analysis for just the unreleased claims. *See id.* Bolton claims nearly 6,000 hours and $4 million of expert work on this project. *Batton* Dkt. 249-2 at 10 & n.11; Bolton Br. 9.

Anywhere objected to the improper attempt to relitigate released and enjoined claims. *Batton* Dkt. 249-2. The district court agreed and in November 2025 struck Bolton's motions. *Batton* Dkt. 257. When the court asked Bolton whether he would like to proceed with class certification just as to the unreleased claims, he declined. *Batton* Dkt. 300-3 at 16–17 (Judge Hunt offering "the two options" of having the motion "stricken and class certification stayed" or "refil[ing] with the limited class definition that excludes all of the [released] claims"). Consequently, neither Bolton nor his counsel were appointed to represent the home buyers with unreleased claims.

In opinions issued in August and September 2026, the Eighth Circuit affirmed the *Burnett* settlement approvals and denial of Mullis's objections. *See Burnett v. Nat'l Ass'n of Realtors*, No. 24-3444, 2026 WL 2421806, at *1 (8th Cir. Aug. 19, 2026); *Gibson v. Nat'l Ass'n of Realtors*, No. 24-3473, 2026 WL 2580277, at *4 (8th Cir. Sept. 1, 2026); *Burnett v. Nat'l Ass'n of Realtors*, No. 24-2143, 2026 WL 2719085, at *1 (8th Cir. Sept. 15, 2026).

### B. Tuccori focuses on resolving the remaining unreleased claims and is appointed class representative.

The *Tuccori* plaintiffs took a different approach. Instead of fighting the *Burnett* release, they focused on the unreleased home-buyer claims and were appointed to represent them. Like Bolton, Tuccori relied on the *Burnett* liability record and verdict. Using that leverage, Tuccori moved promptly into successful settlement negotiations.

Tuccori's original complaint was filed in state court in December 2023. AA 1. The original named defendant was @properties (At World Properties, LLC). *Id*. @properties removed the case to the Northern District of Illinois, where it was assigned to Judge Lindsay Jenkins. *Tuccori* Dkt. 1. Six other home-buyer actions against additional brokerages were later filed and re-assigned to Judge Jenkins. AA 71.

On October 13, 2025, the *Tuccori* plaintiffs reached the first indirect-purchaser, home-buyer class settlements in the nation. They filed a motion for preliminary approval of related settlements with ten defendants, including @properties. *Tuccori* Dkt. 58-1 ¶ 18. The settlement class was limited to home buyers who had not already released their claims. The defendants paid approximately 10% of their corresponding direct-purchaser settlement amounts. *See Tuccori* Dkt. 107-1 at 6 & n.1 (listing each defendant and corresponding amounts). Because only about 1/8 (12.5%) of the total claims remained to be

resolved in the indirect-purchaser settlement, the 1/10 (10%) settlement value was only a slight discount off the direct-purchaser settlements on a per-transaction basis.

The *Tuccori* settlement also included an opt-in plan, modeled after the NAR direct-purchaser settlement approved in *Burnett*. *Burnett* Dkt. 1622. The plaintiffs would have 180 days to negotiate with "**non-parties, such as other real estate brokerages**," to join the settlement. AA 50. Retired Chief Judge Holderman would be appointed Special Master to conduct mediations. AA 50–51. The settlement specifically identified NAR—a named defendant in Bolton's *Batton* case—as a non-party to negotiate with. *Tuccori* Dkt. 58-1 ¶35. It also required total settlement payments to exceed a confidential threshold amount for the settlement to become effective. *Id.* ¶83.

Bolton knew of the *Tuccori* settlement and its opt-in mechanism, *Tuccori* Dkt. 102-1 at 1. But he objected to neither.

Judge Jenkins granted preliminary approval of the initial *Tuccori* settlements. AA 59. The order appointed *Tuccori* plaintiffs as settlement class representatives and *Tuccori* counsel as Class Counsel. AA 62. It also appointed Judge Holderman as Special Master and charged him with "overseeing mediations **with non-parties**." AA 64.

### III. Anywhere Settles With Tuccori as the Appointed Class Representative Through a Court-Approved Process.

After Bolton's motion for class certification was stricken in November 2025 and Tuccori was appointed class representative in October 2025, Anywhere responded to an outreach from *Tuccori* counsel and agreed to mediate just the unreleased home-buyer claims. A mediation was scheduled for February 4, 2026, before Judge Holderman. On January 9, 2026, Anywhere was acquired by Compass, Inc., making Anywhere a corporate affiliate of @properties—one of Tuccori's original settling defendants.

After Anywhere's mediation was scheduled, but two days before it occurred, Bolton moved for preliminary approval of his first settlement, with Keller Williams. *Batton* Dkt. 262. Bolton's motion confirmed he was still pursuing the released home-buyer claims because the settlement included them. *Id.* at 15. Keller Williams agreed to pay $20 million. *Id.* at 1. Because of the enormous resources Bolton spent re-litigating released claims, only about $9.6 million of the settlement will be paid to class members. Bolton's counsel sought and was awarded 1/3 of the settlement plus $500,000 in fees, plus $4.5 million in costs. *Batton* Dkt. 352 at 2–3. Of the $9.6 million, only half—roughly $4.8 million—will go to home buyers with unreleased claims.[2]

[2] The settlement pays released claims at 1/4 value to unreleased claims, but because there are roughly 4 times as many of them, the settlement will likely

Anywhere's mediation proceeded. Judge Holderman attested that he was aware of both *Batton* and the Keller Williams settlement before mediation. *Tuccori* Dkt. 110-1 at 3. He stated that the mediation was "conducted at arms-length according to [his] mediation procedures," and that "each party's counsel at all times conducted their mediated settlement negotiations in an adversarial, arm's-length, and good faith manner." *Id.* He further attested that "[a]t no time during the mediation (or after) did I believe … that any party was negotiating from a position of inordinate strength or weakness." *Id.* at 3–4. Bolton says that Anywhere was "not subjected to discovery" in *Tuccori*, Bolton Br. 1, but that is inaccurate: *Tuccori* plaintiffs subpoenaed 7,076 documents totaling 155,874 pages from Anywhere, which gave them (in their words) "more than 'an adequate information base' on which to negotiate." *Batton* Dkt. 286 at 8 (citation omitted).

The mediation was successful. Following extensive negotiations and ultimately a mediator's proposal from Judge Holderman, Anywhere agreed to pay $9,602,500 to settle just the unreleased home-buyer claims. *Tuccori* Dkt. 107-1 at 18–19. This amount pays the indirect-purchaser claims at nearly par value with the prior direct-purchaser settlement—it is 11.5% of Anywhere's

---

be allocated half to each set of claims. *Batton* Dkt. 243-4 ¶341 (estimating that 79% of the class members had released their claims), 276-2 at 4–5 (applying a 75% discount to released claims).

corresponding direct-purchaser settlement amount, and it settles roughly 12.5% (1/8) the volume of claims. Although attorney's fees and costs have not been finally determined, if the district court awards the 31.5% sought by *Tuccori* counsel, Anywhere's settlement will yield $6.6 million to home buyers with unreleased claims—more than Bolton's Keller Williams settlement.

## IV. Bolton Files an Untimely Motion to Intervene and Subsequently Continues Participating in the Case.

In February 2026, Tuccori moved for preliminary approval of the Anywhere settlement. AA 83. Having done nothing when the district court created and approved the opt-in mediation process in October 2025, Bolton now belatedly attacked Tuccori's and Anywhere's participation in it.

In *Batton*, Bolton filed a motion asking Judge LaShonda Hunt to enjoin her colleague Judge Jenkins from proceeding with the settlement review process. *Batton* Dkt. 273. Judge Hunt denied the motion, calling it "neither necessary nor appropriate." *Batton* Dkt. 300-2 at 9. Bolton appealed that order and had the appeal consolidated with this one before voluntarily dismissing it. *See* CA7 Dkt. 16, 30. He also moved Judge Hunt to transfer the *Tuccori* cases to herself. *Batton* Dkt. 271. She denied the motion, finding "there would be no efficiency," and observing, "I think everyone has known about these cases and that there were overlapping issues." *Batton* Dkt. 299-1 at 7.

Here in *Tuccori*, Bolton moved to intervene to seek "a temporary restraining order and preliminary injunction to enjoin Plaintiffs and Anywhere from proceeding with their" motion for preliminary approval. AA 104. At the hearing, Bolton's counsel added that they would seek "fees and expenses" should the settlement be preliminarily approved. CA7 Dkt. 12-2 at 30.

The district court denied intervention as of right, concluding that doing so would not "impair [Bolton's] interest[s]" because, as a class member, he could "object to the proposed settlement." SA 2. Bolton's concerns about the settlement were "more properly addressed during a final approval hearing, and in conjunction with those of other potential objectors." SA 3. The court similarly found that permissive intervention "at this point in [the] litigation" "would not serve the interests of justice" and would cause prejudice to the existing parties and "needless delay." *Id.* As the court concluded, "fundamentally, [Bolton] seeks to challenge Plaintiffs' settlement with Anywhere ... based on his substantive disagreement with the amount and circumstances of th[e] settlement"—arguments that are "best addressed in connection with a final approval hearing." *Id.*

The district court preliminarily approved the settlement and granted the motion to amend the complaint to name Anywhere a defendant[3] on March 4, 2026. AA 139. After that, other defendants in Bolton's cases, including NAR and HomeServices of America, also mediated settlements through the *Tuccori* opt-in process. *Tuccori* Dkt. 196-1 at 9–10. In his own case, Bolton belatedly changed his strategy in response to *Tuccori* and negotiated an $8.5 million settlement with RE/MAX that was limited to unreleased claims. *Batton* Dkt. 310 at 1.

After intervention was denied, Bolton filed this interlocutory appeal. Anywhere moved to dismiss for lack of jurisdiction, CA7 Dkt. 12, and the Court ordered jurisdiction to be decided with the merits.

The denial of intervention has not prevented Bolton from continuing to participate in *Tuccori*. While this appeal has been pending, Bolton filed an objection to the settlement on September 17, 2026. *Tuccori* Dkt. 207. Bolton's counsel also filed a request to be awarded fees in the amount of one third of the settlement funds contributed by defendants they had previously sued, including Anywhere, Compass, NAR, and HomeServices, totaling more than $38 million in fees, plus $1.5 million in expenses. *Tuccori* Dkt. 195 at 3. The fairness

---

[3] Bolton claims that Anywhere was added as a defendant "solely for purposes of settlement." Bolton Br. 1. In fact, Anywhere is a defendant for all purposes. If the settlement is not approved, the agreement calls for deadlines to be set for Anywhere to file a Rule 12(b) motion. *See Tuccori* Dkt. 98-1 at 90–92.

hearing for all the settlements, including Anywhere's, is scheduled to occur in the district court on November 2, 2026.

### V. Coordination Mechanisms Are Used.

Bolton and Amici claim that appropriate coordination mechanisms such as multi-district litigation (MDL) were bypassed. Bolton Br. 6; Ret. Judges Br. 7-11. They say "there was no JPML decision," Ret. Judges Br. 9, that "*Tuccori* plaintiffs opposed coordination," *id.* at 10; Bolton Br. 12, and that "none of the usual tools for coordinating parallel actions were used," Bolton Br. 11. None of this is factually accurate.

A petition was brought in the JPML and all parties here supported coordination but the JPML denied it. After the October 2023 jury verdict in *Burnett*, plaintiffs in two new home-seller actions filed a petition to coordinate some of the home-seller actions. *In re: Real Estate Commission Antitrust Litigation*, MDL No. 3100 (Jud. Panel. Multidist. Litig. 2023), Dkt. 1. In response, Defendant NAR also sought coordination of the home-buyer actions, including specifically *Batton* and *Tuccori*. JPML Dkt. 196 at 2.

Anywhere supported centralization of "all buyer and seller cases." JPML Dkt. 487. So did *Tuccori* defendant @properties. JPML Dkt. 259 at 1–2; JPML Dkt. 555 at 15. So did Bolton, who stated that *Tuccori* "contained virtually identical factual allegations" to his suit. JPML Dkt. 387 at 1 n.1.

Contrary to the amici retired judges' understanding, the *Tuccori* plaintiffs did not oppose MDL treatment. *Cf.* Ret. Judges Br. 10. Although they argued that the local aspects of their case favored adjudication in the Northern District of Illinois, they said they "would not oppose centralization in either the Northern District of Illinois ... or the Western District of Missouri." JPML Dkt. 290 at 1–2.

In April 2024, however, the JPML declined to order MDL treatment. It noted that "NAR announced that it had reached a nationwide class settlement" and that although "the deal does not automatically include NAR-affiliated brokers with more than $2 billion in transactions or MLSs that are not owned by an NAR affiliate, it purports to include a mechanism for them to opt-in." JPML Dkt. 558 at 3–4. Because the opt-in structure "may well resolve at least some claims in this litigation, if not many," the JPML concluded that "Section 1407 centralization is not necessary." *Id.* at 4.

A year and a half after the JPML's decision, Tuccori moved for preliminary approval of his icebreaker settlements, appointment of himself as class representative and his counsel as class counsel, and creation of the opt-in mediation process, all as described above. Bolton did not object to these coordinating actions.

## SUMMARY OF ARGUMENT

Bolton did not seek to intervene to participate in the litigation of this class action. He is a class member who knew of the litigation from the outset and allowed it to proceed until a settlement was reached through a court pre-approved process that he knew about and did not challenge. In that posture, Rule 23(e) governs the review of the settlement and Bolton's objections to it, and neither Rule 24 intervention nor an interlocutory appeal is permitted.

**I.** This Court lacks jurisdiction because the order denying Bolton's motion to intervene was not a "final decision" under 28 U.S.C. § 1291. Under *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987), an order denying intervention is not final when the proposed intervenor retains the ability to participate in the litigation and to appeal from a final judgment. Bolton can do both. As a class member, he may object to the settlement under Rule 23(e) without intervening. In fact, he has done so. The district court will hear his objection in November 2026. If the objection is granted, it may moot this appeal, and if it is overruled, Bolton may appeal from the final judgment. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002). The Court therefore lacks jurisdiction over this interlocutory appeal.

**II.** If the Court reaches the merits, it should affirm for any of three independent grounds.

*First*, Bolton's motion to intervene was untimely. He knew about the *Tuccori* settlements and the opt-in mediation process when they were approved in October 2025. The publicly filed settlement agreement expressly invited non-parties—including NAR, a defendant in Bolton's case—to participate in mediation and instructed the interested parties to complete the mediation within six months. Yet Bolton waited nearly five months and moved to intervene only after Tuccori reached a settlement with Anywhere. That delay is dispositive: this Court has found far shorter delays untimely. *See Cook Cnty., Ill. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). And it is prejudicial: allowing Bolton to do anything beyond object to the settlement and appeal would render the parties' and the mediator's efforts wasted.

*Second*, Bolton's ability to protect his interest is not impaired without intervention. Because Bolton has never been appointed to represent a class against Anywhere in his own action, his only cognizable interests are his individual interests in his claim against Anywhere. Rule 23(e) allowed him to protect those interests without intervening by filing an objection to the settlement, which he has done, and to appeal any adverse ruling. Because he will be heard and his interests protected to the full extent of the law, there is no impairment.

*Third*, the *Tuccori* plaintiffs adequately represent Bolton's interests. Bolton and Tuccori share the same objective: maximizing recovery for home buyers with unreleased claims. That creates a presumption of adequate

representation. Bolton has failed to rebut it: he offers no evidence of collusion or underhanded activity—only unsupported allegations that this Court, following *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005–06 (8th Cir. 2020), should reject.

**III.** Although Bolton repeatedly attacks the fairness of Anywhere's settlement, he concedes that the question of fairness is not presented on this appeal. The district court must decide that question in the first instance after the fairness hearing, where Bolton will be heard. Only after that record is created and decision made will the issue be ripe for review by this Court.

## STANDARD OF REVIEW

This Court has an independent obligation to assess its own jurisdiction. *Restoration Risk Retention Grp., Inc. v. Gutierrez*, 880 F.3d 339, 345 (7th Cir. 2018). It reviews de novo the denial of a motion to intervene as of right. *Cook Cnty., Ill. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022).

# ARGUMENT

## I. This Court Lacks Jurisdiction Over Bolton's Interlocutory Appeal.

Although Bolton relegates jurisdiction to the end of his brief, the Court is "required to consider [it] as the first question in every case." *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014). Because appellate jurisdiction is lacking, the Court should dismiss the appeal.

### A. The order denying intervention did not end the case for Bolton, so it was not a final decision.

Under 28 U.S.C. § 1291, this Court has jurisdiction over appeals "from all final decisions" of a district court. The order denying Bolton's motion to intervene was not a final decision because it did not end the litigation for all parties, or even for him. With this appeal pending, he objected to the class settlement under Rule 23, and he can appeal from an adverse final judgment. This appeal is therefore premature.

Whether an order denying intervention as of right under Rule 24(a) is a final decision depends on whether the proposed intervenor can still participate in the litigation and appeal from a final judgment. In the Supreme Court's first decision addressing the question, it found an order to be final when the proposed intervenor had "no other way in which he can better assert the particular interest which warrants intervention" and could not "appeal from any subsequent order or judgment in the proceeding unless he does intervene." *Bhd. of*

*R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 524 (1947). The Court next found finality when "the would-be intervenor [was] foreclosed from further action in the case," and "the lawsuit [was] all over so far as the intervenor is concerned." *Dickinson v. Petrol. Conversion Corp.*, 338 U.S. 507, 513 (1950).

In a third case, the Court found a lack of finality and hence a lack of jurisdiction. *Stringfellow*, 480 U.S. 370. There, the district court had denied intervention as of right but granted permissive intervention with strict limits. *Id.* at 373. Despite the limits, the intervenor was "a participant in the proceeding" and thus had "alternative means for challenging the order" after final judgment. *Id.* at 378. "Consequently, the justification for immediate review" was "absent." *Id.* "Pretrial appeals," the Court noted, "may cause disruption, delay, and expense for the litigants; they also burden appellate courts by requiring immediate consideration of issues that may become moot or irrelevant." *Id.* at 380. Adhering to "the finality doctrine," on the other hand, "protects the strong interest in allowing trial judges to supervise pretrial and trial procedures without undue interference." *Id.*

Under *Stringfellow*, when an intervenor "can obtain effective review of its claims on appeal from the final judgment" and "challenge the denial of intervention" and other orders that allegedly "prevented" the intervenor "from protecting its interests," an order denying intervention is not final and appealable. *Id.* at 374–76.

This Court has sometimes found finality for orders denying intervention. *See, e.g.*, *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 745 (7th Cir. 2020); *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). Other times, it has not. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 594 n.11 (7th Cir. 1993) (noting that immediate appeal had not been available earlier in the case).

The order denying Bolton's motion to intervene is a non-final decision for three reasons.

**First**, the order did not "foreclose[]" Bolton "from further action in the case." *Dickinson*, 338 U.S. at 513. He maintains a "way" to assert his interest, *Trainmen*, 331 U.S. at 524, by objecting to the settlement, Fed. R. Civ. P. 23(e)(5)(A). Intervention is not required for a class member to object. *Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002); *Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005); SA 3. While this appeal was pending, Bolton filed an objection raising his concerns that the settlement reflects a "collusive reverse auction," that he was inadequately represented, and that the release undervalues his claims, *Tuccori* Dkt. 207 at 25, as he was entitled to do, *see, e.g.*, *Matter of Broiler Chicken Antitrust Litig.*, 133 F.4th 761, 764 (7th Cir. 2025) (considering "adequacy" objection raised in connection with final approval hearing); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282–86 (7th Cir. 2002) (same for "reverse

auction" objection). None of those concerns has merit, but that is for the district court to decide, and Bolton "will" have the chance "to be heard." SA 3.

**Second**, if the district court overrules Bolton's objections, he can "appeal from any subsequent order or judgment." *Trainmen*, 331 U.S. at 524. The Supreme Court held in *Devlin* that "nonnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." 536 U.S. at 14. Many Seventh Circuit cases have since recognized this principle. *E.g.*, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 319 (7th Cir. 2012); *Korczak*, 427 F.3d at 422; *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 976–77 (7th Cir. 2003).

Anticipating *Devlin*, both the Second and Third Circuits held that class members who can object to a settlement cannot immediately appeal an order denying intervention. *In re PaineWebber Inc. Ltd. P'ships Litig.*, 94 F.3d 49, 53 (2d Cir. 1996) (dismissing appeal); *Carlough v. Amchem Prods., Inc.*, 5 F.3d 707, 712–14 (3d Cir. 1993) (same). As the Third Circuit reasoned, *Stringfellow* establishes that "anyone who is involved in an action sufficiently to have a right of appeal from its final disposition does not have an immediate right of appeal from a denial . . . of intervention." *Carlough*, 5 F.3d at 712; *see also PaineWebber*, 94 F.3d at 53 (similar). Bolton calls these cases outdated. CA7 Dkt. 14 ("MTD Opp.") at 22. But their holdings follow directly from *Stringfellow* and *Devlin*.

Requiring Bolton to wait for final judgment would not "insulate" the intervention denial from review. *Contra* Bolton Br. 42. *Devlin* holds that a class member may appeal any "order that affects him." 536 U.S. at 9. At least one circuit has thus recognized that an objector denied intervention can appeal both intervention and an overruled objection after final judgment. *See Allen v. Bedolla*, 787 F.3d 1218, 1222–25 (9th Cir. 2015). *Devlin*'s statement that the petitioner could "only" appeal the district court's decision to disregard his objections to the proposed settlement is not to the contrary. 536 U.S. at 9. In that case, the Fourth Circuit reviewed the order denying intervention after final settlement approval and upheld it. *Id.* at 5–6. The Supreme Court did not review that ruling. *Id.* at 7. Just like the petitioner in *Devlin*, Bolton can appeal after settlement approval.

This Court's decision in *Larson v. JP Morgan Chase & Co.*, 530 F.3d 578 (7th Cir. 2008), does not support this interlocutory appeal. It involved an unnamed class member who moved to intervene "after the entry of the final judgment" to challenge a summary-judgment order. *Id.* at 581. This Court did not address jurisdiction in that post-judgment posture. It simply affirmed the denial on the merits because the intervenor "had no good excuse for failing to seek intervention" earlier. *Id.* at 583–84.

**Third**, there are good reasons to defer reviewing an order that did not resolve all claims against all parties. *Cf.* Rule 54(b) (allowing a court to direct

final judgment "as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay"). Deferring appeal would "protect[] the strong interest in allowing trial judges to supervise pretrial . . . procedures without undue interference," here reviewing a class settlement under Rule 23. *Stringfellow*, 480 U.S. at 380. The intervention issue also could "become moot or irrelevant," *id.* at 380, if the district court were to deny settlement approval. It is for these very reasons that Congress "expressed a preference that some [allegedly] erroneous trial court rulings go uncorrected until the appeal of a final judgment." *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 430 (1985); *accord Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–09 (2009).

Bolton is wrong that protection for adequate representation is "largely lost" if he must wait to appeal. *Contra* Bolton Br. 43–44. In reviewing the settlement, the district court must "consider[] whether the class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). Moreover, every litigant can claim that an interlocutory ruling may burden it "in ways that are only imperfectly reparable by appellate reversal of a final district court judgment," but that has "never sufficed" to allow immediate appeal. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994).

For these reasons, the order denying intervention is not a "final decision," and this Court lacks appellate jurisdiction.

### B. Bolton's arguments and authorities do not support jurisdiction.

Bolton's arguments for interlocutory jurisdiction rely on considerations and cases that address materially different circumstances, where finality was stronger, final-judgment appellate rights weaker, and the balance of interests different.

#### 1. This is not a case where a class member moved to intervene during litigation and before a settlement.

When class members move to intervene before class representatives are appointed or during litigation, the courts face different considerations because the Rule 23(e) right to object to a class settlement does not directly address those interests. Bolton, however, waived any argument about the control and conduct of the litigation by not timely moving to intervene at the outset or, at latest, when Tuccori was appointed to pursue opt-in settlements with non-parties. *See infra* at 38–44.

Bolton attempts to align himself with litigation intervenors by arguing that he sought intervention to oppose amending the complaint to add Anywhere as a named defendant. Bolton Br. 31; MTD Opp. 3. He did not make that argument below and instead argued that adding Anywhere was cause to reassign the action to Judge Hunt. AA 110. He therefore waived the argument. *See Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*, 168 F.4th 483, 490-93 (7th Cir. 2026).

Moreover, regardless of how Bolton labels his arguments, they are settlement objections. Bolton wants to "block" Tuccori from suing Anywhere only because he opposes the settlement. MTD Opp. 11, 19–20. And even if he became a plaintiff, his consent would not have been required for the amendment because he would not be an "opposing party." Rule 15(a)(2).

Seeking to "enjoin" a settlement is likewise functionally identical to objecting to it and for that reason is unnecessary and improper. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 332 (3d Cir. 2007) (vacating an injunction because Rule 23(e) provides an adequate remedy at law for settlement objections). Bolton's own experience proved the point. He asked the *Batton* court to enjoin the Anywhere settlement. *See Batton* Dkt. 273 at 7. The court denied the motion as "neither necessary nor appropriate." *Batton* Dkt. 300 at 10. Bolton initially appealed that order to this Court. *Batton* Dkt. 316. But then he voluntarily dismissed it, CA7 Dkt. 30, tacitly conceding it lacked merit.

**2. The Seventh Circuit cases.**

Bolton principally relies on four Seventh Circuit decisions. None supports jurisdiction because none involved an attempted interlocutory appeal by a class member who had been denied intervention but had the right to object to a class settlement under Rule 23(e).

*Alcarez v. Akorn, Inc.* is inapposite for three reasons. First, the decision did not address appellate jurisdiction. 99 F.4th 368 (7th Cir. 2024). Second, the appeals from the denial of intervention were not interlocutory; they followed final judgments in six related cases. *Id.* at 372–74. Third, the cases did not involve class settlements, only individual "mootness fee" settlements. As the Court explained, "Rule 23(e) deals only with cases certified as class actions, which these were not." *Id.* at 376.

*Driftless* and *State* did not involve class actions, and the orders there ended the litigation for the intervenor. In *Driftless*, two utility companies moved to intervene in a suit by environmental groups challenging their construction permit, and the denial of intervention was "the end of the case" for them. 969 F.3d at 745. In *State*, a police union moved to intervene in litigation between the State of Illinois and the City of Chicago over use-of-force issues, and the denial of intervention again "end[ed] the litigation for the movant." 912 F.3d at 984. Unlike Bolton, the intervenors had no Rule 23(e) process, no guaranteed right to object, and no *Devlin* appeal. Bolton has all three.

Finally, the Court *dismissed* an appeal taken by unnamed class members from a summary judgment order in *In re Brand Name Prescription Drugs Antitrust Litigation*, 115 F.3d 456, 458 (7th Cir. 1997). The case's discussion of an unnamed class member appealing a denial of intervention was dicta because the appealing class members had not asked to intervene. *Id.* at 457–58. *Brand*

*Name* also did not address class settlements, and it predates *Devlin*, which confirmed that class members may appeal settlement-approval orders after timely objection without intervening and expressly disapproved this circuit's line of cases requiring party status to appeal. *See* 536 U.S. at 14; *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 771 (7th Cir. 2004) (declining to rely on circuit authorities that were "inconsistent with" subsequent Supreme Court precedent).

**3. The out-of-circuit cases.**

Bolton's out-of-circuit authorities also do not establish interlocutory appellate jurisdiction.

Three cases do not address *either* interlocutory-appeal rights or class settlements and thus provide no guidance for this case. *See Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1316–22 (11th Cir. 2013) (unnamed class members who do not object to a settlement are not "parties" under the Federal Magistrates Act); *Bloom v. FDIC*, 738 F.3d 58, 62 (2d Cir. 2013) (unnamed class member who did not appeal an order denying him intervention could not appeal a decertification order that did not "implicate" his individual claim); *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103–04, 1126 (10th Cir. 2005) (unnamed class member could intervene on appeal to challenge subject matter jurisdiction).

Another, *Smith v. SEECO, Inc.*, 922 F.3d 398 (8th Cir. 2019), involved a litigation class that lost at trial, not a settlement class with objection rights. *See id.* at 403. The court expressly distinguished *Devlin* on the basis that *Devlin* addressed appeals by settlement class objectors. *Id.* at 404–05.

Finally, three of Bolton's out-of-circuit cases simply assumed jurisdiction without analysis. *See Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1003 (8th Cir. 2020); *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 694 n.1 (11th Cir. 2017); *Lelsz v. Kavanagh*, 710 F.2d 1040, 1043 (5th Cir. 1983). Such "drive-by jurisdictional rulings" are entitled to "no precedential effect." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42–43 (2025) (citation omitted). The latter two cases, from the Fifth and Eleventh Circuits, also follow a self-styled "anomalous rule" of "provisional" appellate jurisdiction, which this Circuit does not follow. *Buccaneers*, 874 F.3d at 694 n.1; *Lelsz*, 710 F.2d at 1048.

* * *

In sum, the order denying Bolton's motion to intervene is not a "final decision." He remains a class member who is objecting, will be heard, and can appeal from a final judgment. The Court should dismiss the appeal for lack of jurisdiction.

## II. The District Court Correctly Denied Intervention.

If the Court reaches the merits, it should affirm the denial of intervention for any one of three reasons: untimeliness, lack of impairment to Bolton's ability to protect his interest, and failure to prove inadequate representation.

Under Civil Rule 24(a)(2), a court must permit intervention to anyone who,

> [o]n a timely motion, … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

An applicant thus must demonstrate: (1) that his request was timely; (2) an interest in "the subject matter of the action;" (3) "potential impairment, as a practical matter, of that interest by" the action's disposition; and (4) that the existing parties do not adequately represent the interest. *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994)). A failure of any element requires denial. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019).

Bolton failed every element but the second.

### A. Bolton's motion was untimely.

Timeliness is dispositive. As soon as Bolton knew that Tuccori was appointed to represent a class of home buyers with unreleased claims in negotiations with "non-parties, such as other real estate brokerages," AA 50, it was

clear his interests might be implicated. Yet he took no action for months and moved to intervene only after Tuccori reached a settlement with Anywhere. This was too late.

This Court considers "four factors to determine whether a motion is timely: '(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances.'" *City of Chicago*, 912 F.3d at 984. This is not an unusual case, and the first three factors show untimeliness.

***Length of Delay***. "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests *might* be adversely affected by the outcome of the litigation." *Id.* at 985 (citation omitted). In recently opposing a proposed intervenor in *Batton*, Bolton agreed that the intervenor "was required to intervene when he had reason to know that his interests might be adversely affected by the Settlements, not when he knew for certain." *Batton*, Dkt. 364 at 15. The benchmark is **not** "the time between the settlement and the motion to intervene, but instead" the "time between the [proposed intervenors'] knowledge that the suit could impact their interests and the motion to intervene." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003).

Here, Bolton admittedly knew about the *Tuccori* action by February 2024, and he knew of the icebreaker *Tuccori* settlements and opt-in procedure approved in October 2025. *Tuccori* Dkts. 107-1 at 5, 102-1 at 1. The preliminary approval order charged Judge Holderman with "overseeing mediations with **non-parties**." AA 64. And the settlement agreement, which was publicly filed, named the "National Association of REALTORS®" (a defendant in *Batton*) and "any real estate brokerage, franchisor, or real estate company [that] is not a Party to this Settlement Agreement" as a potential "Opt-In Settlor." *Tuccori* Dkt. 58-1 ¶35. It provided that the *Tuccori* "Plaintiffs and Settlement Class Counsel shall use their best efforts" to secure settlements with these non-parties. *Id.* at ¶36. The order also required them to act quickly: they had just six months, until April 13, 2026, to complete any opt-in settlements. *Tuccori* Dkt. 62; *see Cook County, Illinois v. Mayorkas*, 340 F.R.D. 35, 43 (N.D. Ill. 2021) ("[P]otential intervenors cannot claim subjective ignorance of a case's effect on their interests if ordinary diligence would have alerted them of the need to intervene.").

Bolton, however, waited nearly five months and moved to intervene only *after* Tuccori moved for approval of the Anywhere settlement. That "strongly suggests that [he was] not interested in intervening in the *litigation* but in blocking a settlement between the parties—or at a minimum, this settlement." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) (D.

Wood, J.) (emphasis in original). This Court has found far shorter delays untimely. *Cook Cnty., Ill. v. Texas*, 37 F.4th at 1341–42 (two months). As Bolton himself recently argued, "untimeliness is dispositive." *Batton*, Dkt. 364 at 15.

Bolton argues that he objected one day after the settlement was announced. Bolton Br. 24. But "[p]rompt filing of a motion to intervene after the settlement does not indicate timeliness." *Heartwood*, 316 F.3d at 701. As Bolton recently argued, "we measure [timeliness] from when the [intervenor] has reason to know that its interest might be adversely affected, not from when it knows for certain that they will be." *Batton*, Dkt. 364 at 15 (alterations in original) (quoting *City of Chicago*, 912 F.3d at 985).

This Court's pre-*Devlin* decision in *Crawford v. Equifax Payment Services, Inc.*, is not to the contrary. 201 F.3d 877 (7th Cir. 2000). The settlement there included a "last-minute change" from a damages class to an injunctive-relief class. *Id.* at 881. This denied class members the opportunity to opt out, and the circuit's pre-*Devlin* case law denied them the opportunity to object and appeal. *Id.* "Because only parties may appeal," this Court said, it was "vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision." *Id.* It was in discussing this narrow object-and-appeal intervention, which is no longer necessary after *Devlin*, that the Court observed that "[u]nnamed members of the class rarely will suspect a shortfall in the adequacy

of representation before learning of the terms of a (potentially inadequate) settlement." *Id.* at 880–81. That does not justify intervention for someone who can opt-out, who can object and appeal, and who sought to block a settlement for using an opt-in process that had been announced nearly five months earlier. *See id.* at 881 ("[G]iven the possibility of opt-out, even [a potentially inadequate settlement] may not occasion intervention.").

***Prejudice to the Original Parties.*** It is unclear what Bolton thinks he could do if permitted to intervene, but anything more than objecting to the settlement would deeply prejudice the original parties.

If Bolton hopes to halt the settlement approval process, he would need to be appointed a class representative. *See Crawford*, 201 F.3d at 881 (rejecting the "belief that simply by becoming parties [intervenors] could nix the deal by withholding their assent" because "only the representative's approval is essential to settlement"). But allowing him to seek that appointment now would be deeply prejudicial. A class member seeking to "compet[e]" for control must raise its claim "early" in the litigation so "the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel." *China Agritech v. Michael H. Resh*, 584 U.S. 732, 740 (2018). "A class member who is aware of a class action affecting his interests 'acts at his peril in not seeking to become a lead plaintiff and class representative.'" *In re Bos. Sci. Corp. ERISA Litig.*, 254 F.R.D. 24, 34 (D. Mass. 2008). Bolton never

timely sought to become a class representative: not at the outset of the case, nor even when Tuccori was appointed class representative and charged with mediating with non-parties. After that appointment was made, Tuccori and Anywhere justifiably relied on it in mediating a settlement. "Once parties have invested time and effort into settling a case," the prejudice from allowing a disruptive intervention "is manifest." *City of Chicago*, 912 F.3d at 986–87.

A court may "limit[] the extent of the intervenors' rights to objecting and, if necessary, appealing." *Crawford*, 201 F.3d at 881; *see* Rule 23(d)(1)(C). If Bolton's rights were limited to those actions, intervention would be unnecessary because he can already object under Rule 23(e) and appeal. If, however, Bolton could disrupt the settlement, the prejudice would be profound. Late intervention threatens to "render worthless all of the parties' painstaking negotiations." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987).

The prejudice results directly from Bolton's delay. *Cf. Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 390 (7th Cir. 2019). Had Bolton sought to intervene sooner, the parties and the district court could have addressed representation and the opt-in mediation process before it was used. The parties would not "have been burdened in precisely the same manner had [Bolton's] motion to intervene been filed in [October] rather than [February]." *Id.*

***Lack of Prejudice to Bolton.*** Bolton, on the other hand, suffers no prejudice from being denied intervention. A movant is not prejudiced if there are "other … legal routes available" to raise the movant's concerns. *Cook Cnty., Ill. v. Texas*, 37 F.4th at 1343. As already noted, Bolton can object to the settlement and appeal if the district court approves the settlement over his objection. Because he "can adequately convey [his] concerns to the district court at the fairness hearing," *City of Chicago*, 912 F.3d at 987, he will suffer no prejudice. *See also City of Bloomington*, 824 F.2d at 537 (noting "little prejudice" when "potential objector to the proposed consent decree" "already had an opportunity to present its views to the district court").

In short, Bolton's motion was untimely. That alone is reason to affirm.

**B. Because of his Rule 23(e) rights, Bolton's ability to protect his interest will not be impaired without intervention.**

The denial should also be affirmed because in this posture—where there is no ongoing litigation and a settlement has been reached—Bolton can protect his rights without intervening by objecting to or opting out of the settlement.

Determining whether a movant's "ability to protect its interest" will be impaired, Rule 24(a)(2), involves inquiries similar to those governing whether a proposed intervenor will suffer prejudice. *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 179 (7th Cir. 1995) (noting that its finding of no prejudice to the intervenor "also resolves the issue of practical impairment"). Namely,

there is no impairment if the proposed intervenor has an adequate legal forum for pursuing the relevant interests. *See id.* at 174, 177, 179 (holding that proposed intervenor's "interests are not significantly impaired by the denial of his motion to intervene" because "[h]e can pursue his interests in his tax cases"); *Shea*, 19 F.3d at 347 (finding no impairment where the movant could recover the amounts sought by "initiat[ing] his own suit").

Bolton's interests "relating to the property or transaction that is the subject of the action," Rule 24(a)(2), are simply his individual claims as a former home buyer. *Accord* AA 107. He was not appointed a class representative for claims against Anywhere: his motion was struck. *Batton* Dkt. 257. For two reasons, both arising out of his Rule 23(e) rights as a class member, his ability to protect his individual interests will not be impaired without intervention.

First, Bolton can object to the settlement without intervening—both in the district court and on appeal. *Devlin*, 536 U.S. at 10–11; *Robert F. Booth Tr.*, 687 F.3d at 319. Thus, "formal intervention would have served no purpose and unnecessarily complicated and delayed an adjudication." *Gautreaux v. Pierce*, 690 F.2d 616, 635 (7th Cir. 1982); *accord T.K. v. Bytedance Tech. Co.*, 2021 WL 1172767, at *5 (N.D. Ill. Mar. 29, 2021) (no impairment when intervenor "has the 'opportunity, vis-à-vis the settlement process, to object.'"); *Shakman v. City of Chi.*, No. 69 C 2145, 2007 WL 1468721, at *2 (N.D. Ill. May 18, 2007) (same).

Second, Bolton can opt out of the *Tuccori* settlement and not be bound by it. In comparable circumstances, this Court has repeatedly found a lack of impairment. *See, e.g.*, *Sokaogon*, 214 F.3d at 949 (no impairment of "[o]thers—like the St. Croix—who are not parties to the Settlement Agreement [and] are not bound by its terms."); *Reedsburg Bank v. Apollo*, 508 F.2d 995, 999 (7th Cir. 1975) ("as a practical matter the disposition of this action will not impair or impede their ability to" separately pursue claims in their own action). Other courts have reached the same conclusion directly for class settlements. *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (rejecting intervention); *see Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008) (same).

Bolton and Amici raise several counterarguments. None is persuasive.

First, Bolton invokes a "general rule" favoring intervention by absent class members "in cases of allegedly inadequate representation." Bolton Br. 27. But the cases he cites did not address attempts to intervene after a class settlement. In *Standard Fire Ins. Co. v. Knowles*, the sentence Bolton quotes was itself a parenthetical quotation of a treatise in dicta in a decision whose only holding was that a class-action plaintiff could not avoid federal jurisdiction under the Class Action Fairness Act by stipulating, before class certification, not to seek damages exceeding $5 million. 568 U.S. 588, 594 (2013). In *Alcarez*, this Court addressed intervention in a case that did not involve class

settlements, only individual "mootness fee" settlements. 99 F.4th at 372–74. The Court expressly distinguished the situation where class members had objection and appeal rights, stating, "Rule 23(e) deals only with cases certified as class actions, which these were not." *Id.* at 376. Bolton holds the very Rule 23(e) objection and appeal rights that *Alcarez* distinguished.

To be clear, Bolton is "not interested in intervening in the litigation but in blocking a settlement," *Sokaogon*, 214 F.3d at 948. Applying a general rule in favor of intervention in that context would "seriously hamper[]" the "goals of Rule 23." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 315 (3d Cir. 2005) ("[W]e are in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement or that attorneys (who, after finding one or more class members as clients, and wish to share in the forthcoming fee), have the right to intervene.").

Likewise, *Devlin* did not establish that intervention is required here. *Contra* Bolton Br. 28. The sentence Bolton quotes, stating that objectors typically may intervene with "ease," concerned only intervention "for purposes of appeal." *Devlin*, 536 U.S. at 12.

Second, Bolton cites inapposite out-of-circuit decisions. Bolton's best case, *Buccaneers*, 874 F.3d at 696, involved different relief and different interests. The *Buccaneers* movants had their own pending motion for class certification, which had been stayed in light of the second action. *See id.* at 695–96.

They accordingly sought intervention "in order to move to strike the class allegations," which would lift the stay in their case. *See id.*, No. 8:16-cv-01622-AEP (M.D. Fla.), Dkt. 28 at 3. They did not request intervention simply to object to the class settlement, as the district court had already granted them permission to file a brief raising their "reverse auction" arguments. *See id.* In fact, the *Buccaneers* movants would be aligned with Anywhere in this appeal: they argued that "intervention is **not** necessary" where "an 'absent' class member receives notice of a proposed settlement and then seeks to object to the terms." *Id.*, Appellants' Br. 21, 2017 WL 2377467.

Bolton's next case, *Swinton*, also involved a movant whose motion for class certification had been stayed because of a second action. 960 F.3d at 1004. *Swinton* ultimately ruled *against* an intervenor alleging a reverse auction and supports ruling against Bolton on the final element of adequate representation. Although it found that the impairment element was satisfied because opting out would not protect the movant's interests, that was incomplete dicta inapplicable to this case because it did not address whether the *objection* process would satisfactorily protect the interests of a movant who sought to block a settlement to protect his individual claim. *Id.*

Third, Bolton argues that denying his bid for intervention would require adopting the over-broad rule that "class members could never intervene in a class action because they would always have recourse to Rule 23 procedural

protections ... and would therefore always fail to satisfy the third prong." Bolton Br. 28 (quoting *Buccaneers*, 874 F.3d at 696). But that is not true. The right to opt out applies only after a damages class has been certified, and the right to object only arises when there is a settlement.

Fourth, Bolton contends that he objects not only to the settlement, but also to the "fundamentally flawed process" that produced it. Bolton Br. 29. As explained above, February 2026 was far too late to intervene to object to a process he knew about months earlier. Regardless, he can raise this objection at the fairness hearing.

Fifth, citing the Federal Judicial Center's Pocket Guide, Amici add that "waiting for objections or for the settling parties' presentations at the fairness hearing will be too late." Ret. Judges Br. 21 (citing FJC, *Pocket Guide* at 16); Profs. Br. 19 (same). But that guide suggests the solution is to build a record beginning at the preliminary approval stage; it does not suggest permitting intervention. FJC, *Pocket Guide* at 16. And Bolton chose not to object to preliminary approval.

Finally, Bolton's claim that intervention is necessary to obtain "the full suite of appellate rights" is meritless, as Anywhere explained above, *supra* at 30. Bolton Br. 32. He identifies no issues he would raise on appeal that he may not pursue as an objector. To the contrary, because Bolton takes issue with "the entire settlement," he may appeal any aspect of that settlement, provided

he raises the issue at the fairness hearing. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183 n.1 (10th Cir. 2002).[4]

The impairment element is thus a second, independent basis to affirm.

### C. The *Tuccori* plaintiffs are adequate representatives of Bolton's interest.

Bolton also fails the fourth Rule 24(a) factor, inadequate representation.

Where the "prospective intervenor and the named party have the same goal," there is a "rebuttable presumption of adequate representation that requires a showing of some conflict to warrant intervention." *Driftless*, 969 F.3d at 747 (citation omitted). The nature of that presumption depends on the identity of the named party. And as Bolton's own case, *Swinton*, holds, this presumption applies with full force "when the persons attempting to intervene are members of a class already involved in the litigation." 960 F.3d at 1005. Thus, contrary to Bolton's assertion, he must demonstrate an "actual, concrete conflict" with the named party, a burden referred to as the "intermediate standard," *Driftless*, 969 F.3d at 747.

Bolton failed to meet this burden. Bolton and the *Tuccori* plaintiffs "have the same objective[s] in this litigation: the maximization of a financial recovery

---

[4] Bolton also vaguely asserts that party status would allow him to seek "discovery to surface additional flaws with the settlement and its circumstances." Bolton Br. 32. He forfeited this argument by not raising it in his intervention motion. Moreover, such a request is based on pure speculation that is contradicted by Judge Holderman's declaration, *supra* at 17.

from defendant," *Shea*, 19 F.3d at 347 (affirming denial of intervention on adequacy grounds), and the enforcement of the nation's antitrust laws, *see Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (stating proposed intervenor and state had "same goal" of protecting a statute against a constitutional challenge). *See also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993) (denying intervention when "[t]here are no divergent interests, only differing opinions on how the prof[f]ered settlements fit within that framework").

Because the presumption applies, Bolton's argument that there was a "collusive reverse auction" fails absent evidence of "underhanded activity," and he introduced none. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008). Quite literally, he offered no declaration or evidence of any kind. Tuccori and Anywhere negotiated a settlement through a court-pre-approved, retired-judge supervised mediation. Nothing about this process was underhanded. Instead, the mediation provided the "best evidence of a 'truly adversarial bargaining process." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022).

This failure of evidence also dooms Bolton's reliance on the advisory committee's notes. *See* Bolton Br. 20. The "general rule" it suggested was that a "class member who claims that his 'representative' does not adequately represent him, *and is able to establish that proposition with sufficient probability*,"

should be entitled to intervene. Rule 24 advisory committee's note to 1966 amendment (emphasis added). Bolton has not sufficiently established that proposition.

Bolton's own case, *Swinton*, demonstrates the insufficiency of his factually unsupported reverse-auction arguments. There, a plaintiff in the first-filed putative class action (Starke) sought to intervene in the second-filed putative action (*Swinton*) following a settlement in *Swinton*. Starke alleged a "reverse auction," alleging that "Swinton copied his complaint[,] settled before conducting discovery[, and] did not include Starke in settlement discussions." *Swinton*, 960 F.3d at 1005-06.

The Eighth Circuit affirmed the denial of intervention. It held that the intermediate standard should apply, even when the intervenor alleged a "reverse auction," because the plaintiffs shared the same goals and sought "the same relief" for "the same claims." *Id.* at 1005. It also held that overcoming the presumption of adequacy requires "evidence" of "collusion, mendacity or underhanded activity." *Id.* at 1006. The Court rejected Starke's allegations as entirely insufficient to meet that standard. *Id.* at 1005–06. This Court should apply the same standard to Bolton's unsupported allegations.

Bolton argues that a lower standard should apply because the *Tuccori* plaintiffs allegedly settled "on the cheap." *See* Bolton Br. 34. Nothing supports this allegation, and as *Swinton* held, allegations of a supposedly collusive

reverse auction without evidence are not enough to trigger a lower standard. *Id.* at 1005-06. As the district court in *Swinton* commented, merely showing that cases overlap is not enough, because otherwise "no settlement could ever occur in the circumstances of parallel or multiple class actions[.]" *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 877 (S.D. Iowa 2020) (quoting *Negrete*, 523 F.3d at 1099-1100). Because of the fiduciary duties the *Tuccori* plaintiffs have to Bolton, as well as the district court's Rule 23 oversight of their performance of the duties, it is proper to presume that they adequately represent his interests.

Bolton again invokes *Buccaneers*, but in that case, there was clear evidence of underhanded activity. "[T]he movant 'pointed to the emails that showed that the plaintiffs' counsel was engaged in a [self-described] "Machiavellian" plan to undercut the movants' negotiating position,' including leaving the law firm that first filed the case and commencing a second, competing action." *Swinton*, 960 F.3d at 1006 (quoting *Buccaneers*, 874 F.3d at 697). There is nothing like that here.

Finally, many of Bolton's arguments conflate adequate representation for intervention under Rule 24 with adequate representation for settlement approval under Rule 23. These inquiries involve "two separate and distinct theories." *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 331 (5th Cir. 1982); *see In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 WL 6161495, at

*10 (E.D. Tex. Oct. 21, 2020) ("[A]lthough the rules governing class actions and intervention possess similar language in certain subsections, the functions of and procedures inherent to each differ significantly." (citation omitted)).

Indeed, current Rule 24 was rewritten specifically for the purpose of abrogating *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 691-92 (1961), a decision that treated them as overlapping inquiries, *see In re Toyota*, 2020 WL 6161495, at *10 n.14 (citing Carl Tobias, *Standing to Intervene*, 1991 Wis. L. Rev. 415, 429). The rules thus require assessing different relationships: Rule 24 asks whether the "existing parties" adequately represent the *proposed intervenor's* interest, Rule 24(a)(2), whereas Rule 23 asks whether the representative adequately represents the "class," and also requires a separate inquiry into the adequacy of "class counsel." Rule 23(a)(4), (e)(2)(A). The rules also address different effects litigation can have on a non-party's interests: Rule 23 is "concern[ed] with the res judicata effects of a judgment," whereas Rule 24 concerns the "practical" effects of litigation. *Woolen*, 684 F.2d at 332. Accordingly, they involve different tests for adequacy: Rule 23 asks whether the representatives "have the same interest and injury as other members," *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021), and thus requires identifying potential disparities in the value of the underlying claims based on their relative merits, *In Re Clearview AI, Inc. Consumer Priv. Litig.*, 181 F.4th 785, 798 (7th Cir. 2026), whereas adequacy under Rule 24 does not

require such a granular assessment and instead asks whether the party and the intervenor share the same ultimate objective in the litigation. *Shea*, 19 F.3d at 347.

Two final points warrant brief mention. First, the relevant question is not whether Tuccori adequately represents the interests of the "*Batton* Plaintiffs," just the interests of Bolton. Bolton is the only movant; the other *Batton* plaintiffs are not. And some of those other plaintiffs are not even members of the *Tuccori* class because they already released their claims. *See* AA 105; *see also* AA 60–61. Tuccori had no obligation to represent them.

Second, Bolton's blithe assertion that he could have achieved a better outcome for home buyers with unreleased claims, *see* Bolton Br. 35-37, is not only contradicted by the terms of his Keller Williams settlements, but it provides no basis for a claim of inadequate representation under Rule 24. "The fact that the proposed intervening party would have reached different conclusions on individual aspects of a settlement does not alone establish inadequacy of representation." *Domestic Air*, 148 F.R.D. at 336; *see Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

Bolton remains free to argue that *Tuccori* plaintiffs and counsel do not adequately represent the class under Rule 23 at the fairness hearing. His filed objection makes this very argument. *Tuccori* Dkt. 207 at 30–31. And, should his argument be rejected, he remains free to appeal. But in the meantime, the

Court should limit its analysis to the relevant inquiry under Rule 24—whether Bolton and the Tuccori plaintiffs share the same objective and whether Bolton has evidence of underhanded activity. It should not prejudge the Rule 23 adequacy issues without a developed record.

### D. The district court properly exercised its discretion in denying Bolton's alternative request for permissive intervention.

Bolton devotes half of a page to arguing, in the alternative, that the district court erred in denying him permissive intervention under Rule 24(b). Bolton Br. 41. This Court regularly deems such "skeletal" arguments forfeited. *Jackson v. City of Madison*, 176 F.4th 1005, 1016 (7th Cir. 2026); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). It should do the same here.

On the merits, Bolton fails to mention that the standard of review for denial of permissive intervention is abuse of discretion. *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 691 (7th Cir. 2023). Under that high bar, "reversal of a district court's denial of permissive intervention is a very rare bird indeed." *Id.* (quoting *Planned Parenthood*, 942 F.3d at 803).

This case is not that "rare bird." *Planned Parenthood*, 942 F.3d at 803. The district court appropriately "weighed the various parties' interests." *Id.* at 804. It concluded that Bolton could challenge the settlement at the fairness hearing, while intervention would derail the parties' settlement process. SA 3. Bolton's only response is that the parties are not entitled to see a settlement

process through that was "tainted from the start." Bolton Br. 41. As noted above, Bolton did not timely challenge the opt-in process. *See Cook Cnty., Ill. v. Texas*, 37 F.4th at 1341. And he could—and did—raise these arguments in his objection to the settlement. *Tuccori* Dkt. 207 at 17–22. There is no basis to reverse the district court's "highly discretionary decision" to deny permissive intervention. *Bost*, 75 F.4th at 690.

## III. The Fairness of Anywhere's Settlement Is Not Presented on This Appeal.

Bolton and Amici concede that "[t]his appeal is not about ... the substantive fairness of the *Tuccori* settlement." Bolton Br. 2; Ret. Judges Br. 3; Profs. Br. 15. These concessions are required because the district court has yet to evaluate fairness in the first instance, and "our review is of the district court's decision." *United States ex rel. Robinson v. HealthNet, Inc.*, 124 F.4th 511, 519 (7th Cir. 2024).

The hearing in the district court will develop a record on which fairness can properly be assessed. And contrary to the opening briefs, it will feature "full adversarial participation" by Bolton. Ret. Judges Br. 6; Profs. Br. 18. Bolton and his counsel will be there, both as objectors and as parties seeking fees, to help develop the record.

That record will show that the icebreaker *Tuccori* settlements, including its opt-in procedure, were reached without any involvement by Anywhere.

Thus, unlike collusive reverse auctions, this was not a case where a defendant searched for "a plaintiff (or lawyer) willing to sell out the class." Bolton Br. 5; Ret. Judges Br. 6 ("roadmap" discussion). The initial group of settlements occurred between *Tuccori* and the originally named defendants against whom *Tuccori* had been litigating since 2023. Bolton does not even argue that those settlements were collusive, because they unquestionably involved parties who "faced [a] threat from *Tuccori*." Bolton Br. 14. The original defendants resolved that threat by agreeing to pay 10% of their direct-purchaser settlements to release approximately 12.5% as many claims. *Tuccori* Dkt. 107-1 at 6 & n.1. These nearly par value settlements far outpaced the 45–60% discount that Bolton claims typically applies between direct purchaser claims and weaker indirect purchaser claims, as Bolton admits. Bolton Br. 18.

Bolton argues that Anywhere's settlement was "structurally collusive," Bolton Br. 2, and Amici complain of "the settlement process," Profs. Br. 6; Ret. Judges Br. 16, but the opt-in process was made clear in October 2025. It was not "secret[]." Bolton Br. 1. Bolton admits his knowledge of this invitation and process. *Tuccori* Dkt. 102-1 at 1. Yet he chose not to object.

Therefore, Bolton is indeed an "ordinary objector [who] says the settlement pays too little." Ret. Judges Br. 20; Profs. Br. 6 (same). This ordinary objection will fail. Bolton admits that icebreaker settlements set benchmarks against which later settlements are judged. Bolton Br. 39. And here, Anywhere

paid more than the icebreaker *Tuccori* defendants—11.5% of its corresponding direct-purchaser settlement, compared with 10% for the icebreakers.

Anywhere's settlement holds up favorably against Bolton's later settlements too. As discussed above, up to 79% of the claims covered by his Keller Williams settlement were previously released. The enormous resources Bolton spent litigating those released claims impact not just intra-class allocation, but also reductions for fees and costs. To wit, Bolton's counsel asked for and received over $4.5 million in costs, almost all of which flowed from their failed motion to certify an improper class. *Batton* Dkts. 352 at 2, 337 at 1–3. They also asked for and were awarded both a full 1/3 of the settlement as fees, and an additional $500,000 in anticipated future fees and costs. *Batton* Dkt. 352 at 2–3. Collectively, these awards left only $9.6 million of the original $20 million settlement for distribution to the class. That amount will be split roughly equally between released and unreleased claims. *Batton* Dkt. 276; *supra* at 16.

Only after Anywhere had settled did Bolton finally change his strategy and negotiate a settlement with RE/MAX that was limited to home buyers with unreleased claims. *Batton* Dkt. 310-2 at 7–8. This settlement for $8.5 million was for less absolute dollars than Anywhere's, and due to Bolton's high fees and costs, will return even less to the settlement class.

Finally, at several points throughout his brief, and oddly the brief of amicus, there is a suggestion that intervention should be permitted to address

Bolton's counsel's entitlement to fees. *E.g.,* Bolton Br. 1 ("counsel … have worked to secure compensation"); Ret. Judges Br. 15 ("Counsel who do the hard work can be displaced."). These concerns are irrelevant to intervention, which only considers the interests of the proposed intervenor himself. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). Regardless, Bolton's counsel have already recovered $4.5 million in costs and $10 million in fees. On top of that, they have moved below to be awarded a full 1/3 of Anywhere's settlement, along with the settlements of other defendants Bolton sued. This request will be heard by the *Tuccori* court on November 2. No intervention by Bolton was or is required.

## CONCLUSION

The Court should dismiss the appeal or affirm the district court's denial of Bolton's motion to intervene.

Dated: September 21, 2026

*/s/ Aaron D. Van Oort*

Kenneth M. Kliebard
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
T: 312.324.1000
kenneth.kliebard@morganlewis.com

William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**

Aaron D. Van Oort
Kevin P. Wagner
John L. Rockenbach
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
T: 612.766.7000
Aaron.VanOort@FaegreDrinker.com
Kevin.Wagner@FaegreDrinker.com

2222 Market Street
Philadelphia, PA 19103
T: 215.963.5000
william.mcenroe@morganlewis.com

Stacey Anne Mahoney
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
T: 212.309.6000
stacey.mahoney@morganlewis.com

John.Rockenbach@FaegreDrinker.com

Brian J. Paul
**FAEGRE DRINKER BIDDLE & REATH LLP**
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
T: 317.237.0300
Brian.Paul@FaegreDrinker.com

*Counsel for Anywhere Real Estate, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,175 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Circuit Rule 32(b) because this document has been prepared using Microsoft Word for Office 365 in a proportionally spaced typeface using Century Schoolbook size 14 font.

*/s/ Aaron D. Van Oort*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, I caused this document to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Aaron D. Van Oort*